### RIES et al. v. BARTH MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1905.)

#### No. 1,051.

1. PATENTS—INFRINGEMENT—EFFECT TO BE GIVEN TO LATER PATENT.
    Where a complainant patentee has accomplished a new result by a new means, a defendant cannot escape the charge of infringement by showing a later patent. Whether the defendant devised an independent means for accomplishing the same result, or merely added supplementary devices or improved details of the primary invention, using the same principles of operation, is a question to be determined from the proofs; there being no presumption either way.

2. SAME—CIRCUIT-CLOSING APPARATUS.
    The Ries patent, No. 356,963, for an electric circuit closing apparatus, the general purpose of which is to secure the application of the actuating current gradually, with continuously increasing strength, to avoid injury to the parts from sudden strain, covers an invention of a primary character, which embodies a new combination of old devices to accomplish an entirely new result; and its claims are entitled to a broad construction in accordance with their terms, covering any similar combination of equivalent devices. Claims 4, 7, and 9 *held* infringed by the apparatus of the Dillon patent, No. 676,426.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

Appellants' bill for infringement of letters patent No. 356,963, February 1, 1887, to Ries, was dismissed for want of equity.

The claims relied on are these:

"(4) An electric-current transmitting or circuit closing apparatus provided with a primary lever for closing an electric circuit, a secondary lever arranged to be operated to gradually increase the flow of current through the said circuit, and actuating mechanism designed to automatically operate the secondary lever to increase the current strength upon the closing of the circuit by means of the primary lever, substantially as and for the purpose set forth."

"(7) In an electric-current transmitting apparatus, the combination of one or more series of contact points or surfaces, a contact arm or lever designed and adapted to come into electrical contact with said series of contact-points, an adjustable stop to limit the travel or sweep of said contact arm or lever, and a suitable speed governing or regulating device to control its rate of motion, substantially as and for the purposes set forth."

"(9) In an electric-current transmitting or circuit-closing apparatus, the combination, with a series of contact-points, of an arm or lever designed to be operated to come into successive contact with said contact-points, and an adjustable governing or speed-regulating device whereby the sweep of the con-

tact arm or lever over the series of contact-points is completed in a predetermined space of time."

The following prior patents, among others, are set forth in the record: No. 205,303, to Sawyer and Man (1878); No. 237,655, to Wright (1881); No. 239,313, to Brush (1881); No. 248,429, to Edison (1881); No. 251,541, to Edison (1881); No. 255,973, to Hahn (1882); No. 270,352, to Van Depoele (1883); No. 287,524, to Edison (1883); No. 289,918, to Kuhmaier (1883); No. 295,454, to Sprague (1884); No. 316,092, to Weston (1885); No. 353,987, to Sperry (1886). The Stanley patent, No. 325,576 (September 1, 1885), is not in the record, but counsel were permitted to refer to it at the argument.

Appellee's device is made according to letters patent No. 676.426, to Dillon (1901).

M. Frank Brown, for appellants.

W. Clyde Jones, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). The general nature and the object of Ries's invention are thus stated in the specification:

"This invention relates to certain improvements in circuit-closing apparatus, whereby the actuating-current to the brake or other devices is applied gradually and with continuously increasing strength, so as not to subject said devices to the rapid wear and tear due to the sudden strain upon them when, as has heretofore been customary in operating such apparatus, the entire strength of the current is applied at once.

"It further relates to certain improvements whereby the amount of current supplied to the brake or other devices can be regulated and controlled at will, so that the operation of such devices and the extent to which they are applied is at all times under perfect control.

"The general object of this invention is to afford a simple, practical, and efficient means for automatically controlling the supply of current from a secondary battery, dynamo-electric machine, or other source of electricity, to one or more translating devices, in such a manner that said devices and the mechanism connected with and operated thereby are protected from sudden shocks or strains when the circuit leading to such devices is closed.

"It further has for its object the more perfect and efficient application of the whole or any desired portion of the entire available current to such devices, for the purpose of better governing and controlling their operation and preventing any excess or waste of power.

"The invention is especially intended for use in such cases where the translating devices require currents of high potential, and, from the nature of their service, demand more or less frequent applications of the current—such, for example, as in the case of electric or electro-magnetic brakes, electric elevators, electric motors, and other electrical machinery."

The device, so far as it is embodied in the claims in suit, works this way: A primary lever, under the control of the operator, is used to close the circuit. This act of closing the circuit, immediately, in and of itself, releases a secondary lever, which thereupon, by means of actuating mechanism, is moved automatically across the contact points of resistance coils, whereby the current is admitted gradually to the motor. (The particular actuating mechanism shown in the drawings and detailed in the description is a solenoid, which is covered specifically by other claims.) When the primary lever is turned by the operator to its initial position, and the circuit is thereby broken, the secondary lever is carried by the primary

lever back across the contact points, so that the resistance is reinserted in the circuit to protect the motor when the current is again turned on. After the operator closes the circuit, he can hold the primary lever at any point along the resistance, and the secondary lever is held at the same point by contacting with a stop on the primary lever. By means of this stop the operator can adjust the current that is admitted to the motor to the load to be carried by the motor. Opposed to the automatic movement of the secondary lever is an adjustable speed regulating device to control its rate of motion. (An adjustable dashpot is the speed-regulating device specifically described.)

In the unitary, self-contained circuit-closing apparatus described by Ries, the primary and the secondary levers, the actuating mechanism, and the relations of these to turning on the current and cutting out resistance, and to turning off the current and reinstating resistance, are the dominant features of the fourth claim; the adjustable stop to adjust the current to the load, and the speed regulating device to control the rate of motion of the secondary lever, of the seventh; and the adjustability of the speed regulating device, of the ninth.

Ries got together a collection of old elements. Motors, circuits, switches to close circuits, levers, resistance coils, solenoids, and other actuating mechanisms for moving an arm over contact points, dashpots, and (if we look to the Stanley patent and concede appellee's contention) adjustable dashpots, were all old. The prior patents prove this. They show these elements severally, and some in combinations. But none exhibits Ries's combination for any purpose, and none foreshadows Ries's thought. That is, Ries disclosed to the world a new desirable result to be attained, and devised a new means by which the new idea could be put to use. Than this, there is no higher quality of invention. Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715.

It will be observed that the claims in suit could hardly be framed in broader terms. Not particular forms of levers with fulcrums and power-points and load-points at particular places, but any "primary lever" and any "secondary lever" so related as to contribute their share to the new results. Not a solenoid to move the secondary lever across the contact points, but any "actuating mechanism" that will coact with the other elements to produce the new results. Not a pin upon the primary lever to stop and hold the secondary lever, but any "adjustable stop" that will serve the purpose. Not a dashpot or an adjustable dashpot to regulate the rate of motion of the secondary lever, but any "speed regulating device" that will perform the same function in connection with the operations of the other elements. When the Patent Office questioned his right to claims of such breadth, Ries replied:

"With respect to the form of claims in this case, the Examiner is informed that these claims are intended to cover not only the specific construction of the circuit closing apparatus shown, but any circuit closing apparatus that, with the arrangements of circuits and other elements mentioned in the claims, will operate as, and produce the results, set forth therein."

And as we have already indicated, there is nothing in the prior art to discredit the examiner's accedence to Ries's demands.

The defendant's device has a primary lever, under the control of the operator, which is used to close the circuit, and which, upon the closing of the circuit, releases a secondary lever. By means of a weight upon the secondary lever, it is moved across the contact points of resistance coils. That is, defendant uses a gravity engine instead of a solenoid as the "actuating mechanism" for the automatic movement of the secondary lever. But the claim covers any actuating mechanism that performs the same function as the solenoid in bringing about the new result; and furthermore, even if the Ries invention were not of a primary character, the gravity engine, before Ries's time, had been used as the mechanism for actuating a contact arm across the points of resistance. By means of a pin and a link the primary and secondary levers of defendant are so related that the operator, through his direct control of the primary lever, can stop the automatic movement of the secondary lever at any desired point of resistance, and thereby adjust the current to the load. The adjustable stop of defendant is therefore practically identical with Ries's. The adjustable speed regulating device to control the rate of motion of the secondary lever is the same in both apparatuses—an adjustable dashpot. These elements that are brought together in defendant's self-contained apparatus have the same relations of movement and time, perform the same offices, and accomplish the same results, as in Ries's apparatus.

What effect is to be given to the fact that defendant's apparatus is made in accordance with the specifications of the later Dillon patent?

Where neither a new result nor a new principle of operation in producing the result has been achieved, and the patentee has merely improved upon the old way of accomplishing the old result, the presumption is that his patent is not infringed by a later patent for improvements upon the same old way of accomplishing the same old result. That is, presumably, each is an independent improver in a field that was open to the one as to the other—presumably the thought of the one has not overlapped the thought of the other. But the presumption is not conclusive, and, even in the cases of the narrowest patents, it is always open for the complainant to show that the defendant has appropriated his property.

Where a new result has been attained by some patentable mode of operation, the patentee cannot have a monopoly of the new result. It is open for any one to devise and patent a new means of producing the same result—a means that has a different principle of operation—and one who succeeds in doing this is not an infringer of the older patent.

But where a complainant patentee has accomplished a new result by a new means, a defendant cannot escape the charge of infringement merely by showing a later patent. The field covered by the primary patent is not free for defendant's plowing without the owner's consent. True, the defendant may have devised an inde-

pendent method of arriving at the same result; but it is also true that he may merely have added supplementary devices, or improved some details of the primary patent. There is no presumption either way. The facts are to be taken from the proofs. And the facts in this case being, as we find, that the Ries invention is primary, that Dillon accomplishes the same result by the same principles of operation, we think infringement is established. Consolidated Valve Co. v. Crosby Valve Co., 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939; Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 45 C. C. A. 544; Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 48 C. C. A. 72; Lamson Consolidated Store Service Co. v. Hillman, 123 Fed. 416, 59 C. C. A. 510; Western Telephone Mfg. Co. v. American Electric Telephone Co. (C. C. A.) 131 Fed. 78.

Whether Dillon displayed invention in adding supplementary devices or in improving certain elements in Ries's combinations is irrelevant to the question of infringement. Store Service and Telephone Cases, supra.

The Circuit Court, having found that Ries devised a new combination of elements that produced a new result, was in error, we believe, in limiting the complainants to the solenoid and other specific features covered in other claims, and in denying them the range of equivalency that properly inheres in the broad terms of the claims in suit.

Inasmuch as the patent has expired pending the determination of this suit, the mandate will be—

Decree reversed, with the direction to the Circuit Court to enter a decree in complainants' favor for an accounting.