B. F. AVERY & SONS v. J. I. CASE PLOW WORKS.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1906.)

No. 1,242.

PATENTS—VALIDITY AND INFRINGEMENT—PLOWS.

In the Avery patent, No. 650,771, for a double moldboard plow, having adjustable depth-runners and an adjustable rudder, claims 2 to 6, inclusive, which are broad claims, are void for anticipation, their language

being such that they may be read upon prior structures. Claims 7 and 8, which disclose the specific invention, cover a combination of old elements, not merely new in specific construction, but new in kind, and which produces a new result, and they disclose invention, and are valid. Such claims also *held* infringed by a structure which differs from that of the patent only in the location of one of the parts, the change being immaterial to the result.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

For opinion below, see 139 Fed. 878.

In this suit for infringement of claims 2 to 8, inclusive, of patent No. 650,-771, issued on May 29, 1900, to appellants as assignees of George C. Avery, claims 2 to 6, inclusive, were held to be invalid, and claims 7 and 8 valid, but not infringed.

So far as the claims in suit are concerned, the specification describes the invention as follows: "It consists in a plow having a suitable share and moldboard, a standard carrying the same, an adjustable shoe or depth-runner, comprising divided runners pivoted at their forward ends to the lower end of the standard, and adjustably connected at the rear ends to the moldboard, and a rudder or knife pivotally mounted between the portions of the depth-runner, and means for adjusting the said knife or rudder to different depths with respect to the runner in order to hold the plow steady in its movements. * * * My invention is designed to provide a middle-burster or double moldboard plow of superior quality, and one which shall be provided with a depth-runner and a guiding-rudder, both of which are adjustable. * * * Important features of my inventions are the adjustable depth-runner or shoe and the adjustable knife or rudder mounted thereon. The depth-runner, 10, is composed of two pieces arranged side by side, and of the same shape and applied together, so as to inclose the knife, 11, between them. The forward end of each portion of the runner, 10, is curved upwardly and reduced in thickness, so as to project upon either side of the standard, 2. These forward ends of the shoe-sections are pivoted to the said standard by means of a bolt or pin, as 12, which is preferably held in position by means of a cotter-pin, so that it may easily be removed, if desired. The rear ends of the runner-sections are provided with vertical elongated slots, 14, through which a bolt may be passed, securing the said rear ends to rigid brace-rods, as 13, 13. The other ends of the said brace-rods are securely bolted to the moldboard, 5. The slots, 14, in the shoe-sections permit of the shoe being adjusted upon its pivot-pin to different depths. The upper portions of the runner-sections are preferably made thin, while the lower edges are widened out and slightly rounded upon the lower surface, to form a broad bearing surface for engaging the ground. This broad surface is secured by forming lateral extending flanges, 10a, 10a, upon each side of the runner—one on each section thereof. Pivotally mounted between the sections of the shoe, 10, is the knife or rudder, 11, which is a broad plate curved at its forward end, and pivoted at the said forward end between the shoe-sections upon a bolt, 15. The rear end of the rudder is clamped between the shoe-sections, when the same is bolted to the brace-rods, 13. Thus the knife or rudder is pivoted to the shoe, and the shoe is pivoted to the standard, and one clamping-bolt holds both the knife or rudder and the shoe or depth-runner in their adjusted positions."

The claims read:

"(2) In a plow, the combination with the standard, share, and moldboard of a depth-runner pivoted at its forward end to the standard, a knife or rudder pivoted at its forward end to the depth-runner, and means for independently adjusting the rear ends of the depth-runner and rudder, substantially as described.

"(3) In a plow, the combination with a standard, share, and moldboard of a depth-runner pivoted at its forward end to the standard, a knife or rudder pivoted at its forward end to the depth-runner, and means for adjusting the height of the depth-runner, and clamping the rear end of the rudder thereto, substantially as described.

"(4) In a plow, the combination with a standard, share, and moldboard of a depth-runner, comprising two sections pivoted at their forward ends upon opposite sides of the standard, means for adjusting the height of their rear ends, and a knife or rudder pivoted at its forward end between the sections of the depth-runner, substantially as described.

"(5) In a plow, the combination with a standard, share, and moldboard of a depth-runner, comprising two sections pivoted, at their forward ends upon opposite sides of the standard, means for adjusting the height of their rear ends, a knife or rudden pivoted at its forward end between the sections of the depth-runner, and means for adjusting the height of its rear end independently of the adjustment of the depth-runner, substantially as described.

"(6) In a plow, the combination with a standard, share, and moldboard of a depth-runner, comprising two sections pivoted at their forward ends on opposite sides of the standard, a knife or rudder pivoted at its forward end between the sections of the depth-runner, and means for adjusting the height of the rear ends of the depth-runner and clamping the knife or rudder between its sections, substantially as described.

"(7) In a plow, the combination with a suitable standard, moldboard, and share of a depth-runner, comprising two sections of similar shape, applied side by side, and pivoted at their forward ends to each side of the plow-standard, the said sections having vertical slots at their rear ends, brace-rods rigidly secured to the moldboard, and extending toward the runner, a bolt passing through eyes in the said rods and through the slots in the runner, and a knife or rudder pivoted between the said depth-runner sections, whereby the said runner may be clamped in different adjusted positions between the runner-sections, substantially as described.

"(8) A double moldboard plow, comprising a standard, a double frog, a double share secured thereto, and a double moldboard secured to the same, a depth-runner arranged beneath the moldboard and formed of two sections, having their forward ends curved forwardly and pivotally attached on each side of the plow-standard, the said runner-sections being provided with vertical, elongated slots at their rear ends, laterally-extending flanges formed upon the lower edges of the said sections to provide a broad bearing surface, a knife-plate or rudder pivoted between the sections of the runner, the said rudder being curved at its forward end and pivoted between the forward ends of the runner-sections, rigid brace-rods extending from the moldboard to each side of the runner, a clamping-bolt passing through eyes upon the said brace-rods and through the elongated slots in the runner-sections, so as to clamp the runner in different adjusted positions, the knife or rudder being thereby clamped between the said sections in its different adjusted positions, substantially as described."

In the application as originally filed the claims which now appear as 7 and 8 were numbered 3 and 4, and were allowed without objection; and claim 2 read as follows: "In a plow, the combination with a suitable standard, share, and moldboard of a depth-runner, comprising two sections pivoted at their forward ends upon each side of the plow-standard, and provided at their rear ends with adjustable slots, brace-rods rigidly secured to the moldboard, and extending toward the depth-runner from each side, a bolt passing through the adjusting slots for adjustably securing the depth-runner to the said brace-rods, substantially as described." This claim was rejected on reference to Ward, 604,814. Applicant's attorneys thereupon canceled the claim, and substituted therefor claims 2 to 6, inclusive, as they now appear in the patent. The examiner rejected these substituted claims on reference to Billups, 123,858, and Sylvester, 410,218. The attorneys asked for a reconsideration, saying: "While the patents to Billups and Sylvester cited in answer to claims 2 to 6 seem at a glance to meet the constructions set forth in said claims, a close comparison of the claims with these patents will disclose the fact that in every claim the combination with a plow of a pivoted depth-runner and rudder pivoted to said runner is the essential feature, and that the depth-runners or shoes in the patents are not pivoted. This difference in construction permits of a double adjustment, which is impossible in the construction shown in the references," and the application was then allowed.

The state of the art was shown to the court by certain plows which were in public use for more than two years prior to the application, and by the following patents: Burke, 22,013; Billups, 123,858; Brantly, 248,569; Lawrie, 261,001; Laughlin, 297,815; Roberson, 326,591; Moore, 366,597; Landauer, 388,982; Sylvester, 410,218; Holsclaw, 459,204; Montgomery, 459,410; McMillan, 555,327; Dean, 563,752; Ward, 604,814; Ankarstolpe, 607,207.

Edward T. Fenwick and Edward M. Kitchen, for appellants.

George P. Fisher, Jr., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). Without going over the details of construction exhibited in prior plows and patents, the state of the art when Avery filed his application may be summarized thus: The middle-burster plow had been in use for more than 30 years. Many inventors had directed their efforts to its improvement, particularly in the way of providing a runner or shoe to regulate the depth of the furrow, and a rudder to prevent veering. There were single runners and double runners, some sustained by rods depending from the moldboards, others by rods from other parts of the plow-structure, some rigid, others adjustable; various rudders, some stationary, others adjustable; runners without rudders, stationary runners with adjustable rudders, stationary rudders with adjustable runners; and, finally, a double runner pivoted at its forward end to the standard, and having its rear end adjustably sustained by rods from the plow-structure, together with a rudder pivoted at its forward end between the members of the runner, and having its rear end adjustably secured to the runner. In this most advanced construction two separate adjustments by two separate means of adjustment were required.

Avery devised for use in a middle-burster plow a combination in which a rigid support extends from the plow-structure to the rear end of the runner, and sustains, by means of a through-bolt, both the runner and the rudder in adjustable relations to each other and to the plow. No prior structure anticipates the combination that Avery actually made. But appellee denies that invention was involved. All of the elements were old, and if Avery had made merely a selection and rearrangement of old elements, without producing any new result, want of invention would be clear. Greist Mfg. Co. v. Parsons, 125 Fed. 116, 60 C. C. A. 34. Or if he were only a detail improver, he could not exclude others from gleaning in the same open fields. Milwaukee Carving Co. v. Brunswick Co., 126 Fed. 171, 61 C. C. A. 175. But, though old elements were used, the combination was not merely new in specific construction, but was new in kind; and in this very ancient and familiar art we do not see that the most gifted inventor could do more than produce a new result by a new mode of operation in some minor adjunct of the main structure. Inasmuch as Avery did this, he was entitled to generic as well as specific claims. Lamson Consolidated Store Service Co. v. Hillman, 123 Fed. 416, 59 C. C. A. 510: Ries v. Barth Mfg. Co., 136 Fed. 850, 69 C. C. A. 528.

We have been speaking of what Avery did with the plow. What he did on paper is another matter. So far as he has failed to claim

distinctly his invention, the public may profit by the disclosure thereof.

It is admitted that the broad claims, 2 to 6, inclusive, are infringed if they are valid. Omitting the general features of the plow, claim 5 calls for a pivoted depth-runner of two sections, means for adjusting the height of the rear ends thereof, a rudder pivoted between the runner-sections, and means for adjusting the height of the rear end of the rudder independently of the adjustment of the runner. This is not limited to the combination, in a middle-burster plow, of a rigid support, a pivoted runner, a pivoted rudder, and a suitable means of securing the runner and the rudder in adjustable relations to each other and to the plow at one operation. It reads exactly upon the old plows, in which two separate adjustments by two separate means were required. And it responds to the general statement of invention in the specification:

"Divided runners pivoted at their forward ends to the standard, and adjustably connected at their rear ends to the moldboard, and a rubber pivotally mounted between the portions of the depth-runner, and means for adjusting the rudder to different depths with respect to the runner. * * * A middle-burster plow which shall be provided with a depth-runner and a guiding-rudder, both of which are adjustable."

As it stands, the claim is anticipated, void, and it is not in our power to redraft the patent.

Similarly, claim 4, calling for a pivoted runner, means for adjusting the height of the rear end thereof and a pivoted runner, is void, because it too may be read upon old structures.

But in claims 2, 3, and 6, disregarding the differentiations as immaterial to the present view, we find a combination of a pivoted runner, a pivoted rudder, and means for adjusting both the runner and the rudder. Appellants insist that these claims cover generically the conception of effecting the two adjustments by one instrumentality at one operation. The word "means" is plural in form. It is frequently and properly used as a plural; likewise as a singular. Here there is no article, no adjective, no predicate to indicate the number. However, if this ambiguity were all we had to face, we might be able to sustain these claims, on the principle that a patent should be construed so as to save rather than to destroy it, by saying that, since each essential element should be named separately, and since the word "means" occurs but once, it points to a single device as performing the two functions. Not only did Avery in his original application fail to state and claim that he had devised a combination which was new in kind as well as new in specific construction, but his attorneys in submitting the substituted claims also failed. They made no distinctions between claims 4 and 5, on the one hand, and claims 2, 3, and 6, on the other. They asserted that the essential feature in each claim was a pivoted runner, with a rudder pivoted thereto, whereby both were adjustable, and they answered the reference patents by pointing out that in them the runners were not pivoted, and therefore a double adjustment was impossible.

The fact that the specific description and specific claims portray a combination in which one means effects the two adjustments at one operation does not alter the case. That fact only establishes that Avery asserted that there was utility, novelty, and invention in the specific

construction. For aught that the patent "particularly points out and distinctly claims," the novelty and invention may have lain wholly in the specific form of some one else's generic combination. It is only by going to the prior art that we learn that Avery might have made and held generic claims. But this information does not enable us to afford protection for what the patent fails to. point out particularly and to claim distinctly.

Respecting claims 7 and 8, what we have said in reference to Avery's actual structure establishes their validity.

In appellee's middle-burster plow appears the combination of the runner in two sections, pivoted to the standard, the rudder pivoted between the runner-sections, rigid brace-rods extending to each side of the runner, and the bolt passing through the rods and sustaining the runner and the rudder in adjustable relations to each other and to the plow. The structure is so identical with that of the appellants that the only contention of noninfringement is based on the assertion that appellee's brace-rods do not depend from the moldboard. Claim 7 mentions "brace-rods rigidly secured to the moldboard," and claim 8 "rigid brace-rods extending from the moldboard."

Even if the assertion respecting the character of appellee's construction were true, we do not think infringement would be avoided. It was old to attach the upper ends of the brace-rods to various parts of the plow-structure, including the moldboard. It was old to brace the moldboard by extending rods from it to suitable rigid parts of the plow. It was also old to brace the moldboard by means of a broad plate or frog attached to the standard, and to which the moldboard is fastened. In claims 7 and 8 the new use of the brace-rods is to bring them down as a rigid support for the through-bolt, which holds both the runner and the rudder in adjustable relations to each other and to the plow. This feature, and this feature alone, saves the bringing together of the old elements from being held void for want of invention. This feature may be availed of equally well whether the brace-rods depend from the moldboard or from any other suitable part of the plow-structure. In Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540, one element in Folger's combination was described as being "a supplemental valve. arranged .in the plug of the main valve." Folger's invention lay in conceiving and putting into workable form the idea of regulating separately the flow of the water, while preserving the unity of action of the supply valves for both water and gas. The real invention could be put to use, but in a less desirable way, by arranging the supplemental valve. which was an essential element, outside of the plug of the main valve. But we held that such a change did not avoid infringement, saying:

"It is well settled that there is no infringement if any one of the material parts of the combination is omitted, and that a patentee will not be heard to deny the materiality of any element included in his combination claim. If a patentee claims eight elements to produce a certain result, when seven will do it, anybody may use the seven without infringing the claim, and the patentee has practically lost his invention by declaring the materiality of an element that was in fact immaterial. But form, location, and sequence of elements are all immaterial, unless form or location or sequence is essential to the result, or indispensable, by reason of the state of the art, to the novelty of the claims."

Here the result is obtained quite irrespective of the location of the upper ends of the brace-rods. Appellants reach the result by one location of the material element; appellee by another location equally well known, and the state of the art does not require the novelty of the claims to be predicated on a particular location. See, also, Cazier v. Mackie-Lovejoy Mfg. Co., 138 Fed. 654, 71 C. C. A. 104; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Beach v. American Box Co. (C. C.) 63 Fed. 597; King Ax Co. v. Hubbard, 97 Fed. 795, 38 C. C. A. 423; Calculagraph Co. v. Wilson (C. C.) 132 Fed. 20; Benbow-Brammer Mfg. Co. v. Simpson Mfg. Co. (C. C.) 132 Fed. 614.

But the assertion that the upper ends of appellee's brace-rods are not attached to the moldboard we find to be specious. In using middle-burster plows it is frequently desirable to have a moldboard of less width than that of the moldboard customarily supplied by the various manufacturers. On examining their competitors' plow, the appellee company perceived that they might obtain an advantage by offering a plow with virtually two moldboards. They made the broad plate or frog that is attached to the front of the standard of such a form and width that the regular-sized moldboard might be removed, and the frog used as a smaller moldboard. Their brace-rods depend from the extreme edges of the frog. Literal infringement is as clear as if they had first copied appellants' plow exactly, then trimmed down the moldboard to the points where the brace-rods are attached, and then added the regular-sized moldboard to the structure.

The decree is reversed, with the direction to proceed further in conformity hereto.