### LUTEN v. SHARP et al.

(District Court, D. Kansas, Second Division. April 7, 1914.)

#### No. 1356.

PATENTS (§ 328*)—INFRINGEMENT—CONCRETE BRIDGE.

> The Luten patent, No. 853,203, for a concrete bridge, consisting of a floor with walls at each side and reinforcing members embodied transversely of the floor and extending upward into the walls, construed, and *held* not infringed.

In Equity. Suit by Daniel B. Luten against Walter Sharp and others. On final hearing. Decree for defendants.

See, also, 200 Fed. 151.

Russel T. McFall, of Indianapolis, Ind., and Joseph G. Cary, of Wichita, Kan., for complainant.

S. A. Smith and Joseph T. Lafferty, both of Winfield, Kan., for defendants.

POLLOCK, District Judge. This suit was brought by complainant, charging defendants with infringement of his rights under letters pat-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ent by him owned, numbered 830,483, 852,970, 853,183, 853,203, 853,-204, 979,776, 989,272, 999,663, and 933,771, in the building of a county bridge across a stream called Grouse creek at a place known as Darst ford, in Cowley county, this state, and for an accounting of profits made. The bill of complaint, after setting forth said patents and certain adjudications thereon, charges infringement in the most general language, as follows:

"And your orator further shows to your honors, on information and belief, that the defendants herein, well knowing the premises and the rights and privileges secured unto your orator, and continuing to injure your orator and deprive him of the profits, benefits, and advantages which might and would otherwise accrue to him from the said letters patent Nos. 830,483, 852,970, 853,183, 853,203, 853,204, 979,776, 989,272, 999,663, and 933,771, and from the use of the inventions set forth therein, since the issuance thereof and the acquirement of the title thereto by your orator, within six years last past, and before the commencement of this suit, have, without license and authority, against the will of your orator, and in violation of your orator's rights, and in infringements of the aforesaid letters patent Nos. 830,483, 852,970, 853,183, 853,203, 853,204, 979,776, 989,272, 999,663, and 933,771, at Cowley county, in the district of Kansas, knowingly and willfully constructed and sold, or caused to be constructed, used, and sold, a bridge or structure comprising one 40-foot and one 20-foot span over Grouse creek, at what is known as Darst ford, in section 13, township 33, range 6, in said Cowley county, by the practice of and in accordance with and containing the improvements and inventions described and claimed in said letters patent Nos. 830,483, 852,970, 853,183, 853,-203, 853,204, 979,776, 989,272, 999,663, and 933,771, or material or essential parts thereof, all as recited in the claims thereof, but to what extent the defendants have made use of said inventions or improvements described and claimed in said letters patent Nos. 830,483, 852,970, 853,183, 853,203, 853,204, 979,776, 989,272, 999,663, and 933,771, your orator does not know, and prays a discovery thereof."

To this bill defendants first demurred on the specific ground the averments of the bill as to infringement were insufficient. This demurrer was overruled. Defendants then answered, admitting the building of the structure complained of, denying infringement of any rights granted to complainant by virtue of his letters patent as set forth in the complaint, but, on the contrary, asserting said bridge was constructed in accordance with rights granted to defendant Sharp by letters patent No. 885,386.

On issue so joined proofs were taken in open court and the case submitted for final decision and decree. It is thus seen defendants raise no issue with complainant as to the validity or ownership of the nine different letters patent set forth and relied upon in the bill of complaint. On the contrary, complainant raises no issue as to the validity or ownership of defendant Sharp's letters patent. In this condition of the pleadings the court would be left to grope in the dark among the many claims of the letters patent involved to determine the question of infringement charged against defendant, were it not that in the statement of the respective claims of the parties at the trial the solicitor for complainant waived any contention as to the infringement of many of complainant's patents entirely, and limited the inquiry in the following manner. After reading claim No. 1 of defendant's patent, it was stated:

"Now that to my mind suggests that the chief controversy here will be between Mr. Sharp's patent and our patent No. 853,203. Now, I just want to state in a word my theory of the law, and that is this: Mr. Luten's application antedates Mr. Sharp's application. Mr. Luten's patent antedates Mr. Sharp's patent. Mr. Luten's claim is for this reinforcement across the roadway and up into the parapets, binding the whole structure together, including the side walls. Now, we are not making an attack on Mr. Sharp's patent or its validity, or its novelty and its validity. * * * The fact is that his patent is a combination patent as the claims read, and one of the elements, to my mind an important element, is the one claim of our patent No. 853,203; that is, the reinforcement transverse of the roadway. Now, as we understand the law, the Supreme Court has decided it several times, if we have a patent on this device of reinforcing across the roadway and up into the parapet, and Mr. Sharp subsequently procures a patent for a combination which includes, as it reads in part, 'suitably supported abutments, parapets, and intermediate beams connecting the same, and a floor between the said abutments and the said parapets and upon the said beams, and a wire network imbedded in the said floor and extending upwardly through the said parapets,' his combination patent may be entirely valid, but he cannot use the elements which he has taken from us without infringing, any more than we can take his entire combination, using our own device, without infringing his. It is just the old question of the interlacing or interlapping."

Assuming, therefore, the entire controversy between the parties to be that stated by solicitor for complainant, as above, and further conceding the settled law to be as therein stated, concerning which there can be no serious controversy, as will be found from a consideration of the authorities (Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017; Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, 36 L. Ed. 713; Ries v. Barth Mfg. Co., 136 Fed. 850, 69 C. C. A. 528; Columbia Wire Co. v. Kokomo Steel & Wire Co., 143 Fed. 116, 74 C. C. A. 310), and many other cases which might be cited, and further conceding, as do the parties, the validity of all letters patent involved in this controversy, the single question presented for decision is this: Was the bridge in controversy constructed in accordance with the claims of the Sharp patent? If so, as the application for the Luten letters patent No. 853,203, and the patent itself, antedates the application for the Sharp patent, and the patent itself, does the method actually employed in the construction of the bridge by defendants, although found to fall within the claims of the Sharp patent, infringe upon the prior rights granted to complainant under his patent?

This involves a consideration of: (1) The actual method employed in the construction of the bridge; (2) whether such method falls within the protection afforded by the claims of the Sharp patent; (3) if so, does such method of construction infringe upon rights secured to complainant by the claims of his prior patent No. 853,203, as above contended?

From a reading and consideration of the proofs, the actual method employed in the construction of the bridge in question is found to have been as follows:

The structure is composed of two spans, one of 20 and the other 40 feet in length. The weight of the structure and superimposed burden is borne by girders, with one end resting on the bank abutments, the other on a center pier, placed about 4 feet apart. These girders are

tied with transverse rods, and the space between them filled with concrete set in forms giving the underside the shape of an arch, with a mesh of hog wire imbedded in the concrete floor of the bridge near its surface and extending up into the concrete walls on the sides of the bridge. The concrete floor of the bridge is thereafter covered with earth by others than defendants.

The claims of the Sharp patent read as follows:

"1. A bridge structure comprising in combination a plurality of coalesced elements composed of concrete or analogous material, and including suitably supported abutments, parapets, and intermediate beams connecting the same, and a floor between the said abutments and the said parapets and upon the said beams, and a wire network imbedded in the said floor and extending upwardly through the said parapets.

"2. A bridge structure comprising, in combination, a plurality of coherent elements composed of concrete or analogous material and including suitably supported abutments, beams connecting the same, and a floor between the said abutments, upon the said beams, and rods imbedded in the said beams and projecting through the said abutments into the said floor."

A comparison of the method employed in the construction of the bridge with the claims of the Sharp patent, more especially claim No. 1, makes it entirely clear the method actually employed in the construction falls well within the claims of the patent. Does this method of construction, thus employed, although within the claims of the Sharp patent, infringe upon prior rights granted to complainant under his patent No. 853,203, more especially claims numbered 8 and 9, principally relied upon by complainant?

Claims numbered 8 and 9 read as follows:

"A concrete bridge consisting of a floor with walls at each side and rein forcing members imbedded transversely of the floor and extending upward into the walls.

"A bridge of concrete or similar material with reinforcing members imbedded transverse to the roadway, in combination with a wall or spandrel with upright reinforcing members imbedded."

In this consideration, it may be observed, the claims, specifications, and drawings of the Luten patent, No. 853,203, render it entirely clear the object sought to be accomplished by the invention and improvement therein claimed does not relate to bridges thrown across the larger streams or bodies of water, requiring either many spans or spans of any great length. On the contrary, the method of construction therein contemplated is a single-arch reinforced body thrown across the smaller water courses from one bank to the other, such as culverts. In neither the specifications nor claims of said patent is the word "pier" or "span" mentioned. The reinforcing materials therein employed are placed transversely to the roadway, a method of construction entirely dissimilar in principle in the most part to that employed in the structure in question, and is such a method of construction as would be impossible to employ in spanning a space of 60 feet, as does the structure in question.

In real truth, as gathered from the entire record, the principal ground of contention resolves itself into the use by defendants of the surface-imbedded mesh of hog wire which extends upward into the side walls or parapets of the structure; it being the contention of complainant

this is such a method of reinforcing the structure transversely to the roadway as to infringe upon right covered by the claims of his patent.

It may be observed the imbedded mesh of hog wire employed in the structure does operate to reinforce the concrete floor of the bridge transversely, to the same extent, however, and no more, than it does longitudinally, and this mesh of wire does extend up into the side walls of the bridge, and does undoubtedly serve to bind said walls to the bridge structure. However, it is quite clear the office performed by the surface-imbedded hog wire in the structure in question is not the same office as that performed by the transverse reinforcing rods or materials in the Luten patent. The object of the transverse reinforcing materials employed under the claims of the Luten patent is to render the structure of sufficient strength to support its own weight and the added load of crossing travel, whereas, under the method employed in the construction of the bridge in question, the girders resting on the abutments and pier must and do sustain the entire weight of the structure and the superimposed burden of travel, for if such element as the girders, not present in the combination of the Luten patent, should be removed from the structure in question, the bridge would collapse of its own weight. The purpose of the imbedded hog wire in the structure in question is merely to assist in binding the materials together. It is not the mechanical equivalent of the transverse reinforcement employed in the Luten patent. In the structure in question, the walls or parapets at the sides of the bridge, and the carrying of the imbedded hog wire up into the same, is not for the purpose of strengthening the burden-carrying capacity of the bridge, for the walls in the bridge in question are merely employed for the protection of the traveling public, the structure is of equal strength with the side walls or parapets, and the carrying of the imbedded hog wire up into the same omitted in construction.

In addition to this thought, let there be added the prima facie showing made by the action of the department in issuing the subsequent Sharp patent, containing the claims it does, in the face of the former grants to complainant. From which it follows, conceding the validity of all the patents involved in this controversy, and the many claims thereof, the charge of infringement in this case is not made out by the proofs.

The bill is therefore dismissed. It is so ordered.