HENRY v. CITY OF LOS ANGELES.

(District Court, S. D. California. January 10, 1916.)

No. A-87.

1. PATENTS ⬳178—CONSTRUCTION—"MEANS."

When the word "means" is used in a patent simply to describe connecting parts that bring into working relation the real elements of the machine, it should have the broadest significance in the application of the doctrine of equivalents; but, where the word is used to describe the real working elements of the patent, it must be limited to the disclosures in the patent and to such equivalents thereof as are justified by the relation which the invention bears to the state of the art.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. ⬳178.

For other definitions, see Words and Phrases, First and Second Series, Means.]

2. PATENTS ⬳178—VALIDITY AND CONSTRUCTION—EFFECT OF USE OR NONUSE OF INVENTION.

The fact that a patented device does not go into instant and general use is at least some evidence that it is not a new and useful invention, and where the device has never been manufactured or used during 10 or more years after patenting, the patent is not entitled to that liberal application of the rule of equivalents to which a patent is entitled where the invention was the first to produce a new and useful result.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. ⬳178.]

3. PATENTS ⬳328—INFRINGEMENT—WATER WHEEL GOVERNOR.

The Lyndon patent, No. 695,220, for an electro-mechanical water wheel governor, construed, and held not infringed.

In Equity. Suit by George J. Henry, Jr., against the City of Los Angeles. On final hearing. Decree for defendant.

Raymond Ives Blakeslee, of Los Angeles, Cal., for complainant.
Joseph F. Westall and Albert Lee Stephens, both of Los Angeles, Cal., for defendant.

TRIPPET, District Judge. This is a suit in which the complainant claims that the defendant is infringing a patent owned by the complainant and granted to one Lamar Lyndon. The patent was granted for an electro-mechanical water wheel governor. It will not be necessary for the court to describe fully this patent, or the claims made in it. The purposes which were sought to be accomplished by the invention are described in a general way in the first paragraph of the specification, as follows:

"The governors at present employed to regulate the water supply to the water wheel in general simply operate to open or close the water wheel gate, thereby allowing of the admission of a greater or less supply of water. Now, the first effect of such opening or closing of the gate, owing to the inertia of the water, is always the opposite to that which it is desired to bring about; i. e., the opening of the gate operating to momentarily cause less velocity of water at the wheel, owing to the greater orifice the water has to flow through, and, vice versa, the closing of the gate operating to momentarily cause an increase of velocity, owing to the contraction of the orifice. More-

over, these contrary effects will last until the changed conditions can be imparted to the source of supply of water."

Complainant contends that the evidence shows that the defendant is infringing the complainant's patent, and that it is not necessary to resort to the doctrine of equivalents in order to determine this infringement. The complainant contends that the Lyndon patent in controversy is a primary and pioneer patent; that it is so broad in scope and entitled to such broad interpretation that the claims therein may be read upon the structures of the defendant, so as to show infringement regardless of the doctrine of equivalents. The broadest claim in the Lyndon patent is as follows:

"6. In a water wheel governor, the combination with means for operating the water gate in either direction, a by-pass for the water wheel, and a valve controlling said by-pass, of means connected to the water gate operating means, and operating the by-pass valve inversely to the operation of the water gate."

The complainant urges that this claim covers any mechanical means connected with the water gate operating means, and operating the by-pass valve inversely to the operation of the water gate. He contends that the word "means" is so broad in its scope that it embraces any mechanism that will accomplish the result claimed for his patent. In support of this contention complainant cites the Paper Bag Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122; Ries et al. v. Barth Manufacturing Co., 136 Fed. 850, 69 C. C. A. 528; Arnold v. Tyden, 193 Fed. 410, 113 C. C. A. 344; Davis Sewing Machine Co. v. New Departure Manufacturing Company, 217 Fed. 775, 133 C. C. A. 505.

In order to understand the Paper Bag Case as it is claimed to apply to the question before the court, we will quote a few sentences from it:

"It may be well before considering these contentions to refer again to the view which the Circuit Court and the Circuit Court of Appeals had of Liddell's patent. The Circuit Court said that the 'pith' of the invention 'is the combination of the rotary cylinder with means for operating the forming plate in connection therewith, limited, however, to means which cause the plate to oscillate about its rear edge on the surface thereof,' and distinguished the invention from the prior art, as follows: 'Aside from the cylinder and the forming plate oscillating about its rear edge everything in these claims [the claims of the patent] is necessarily old in the arts.' It was this peculiar feature of novelty, it was said, which clearly distinguished it from all that went before it. This conclusion was in effect affirmed by the Circuit Court of Appeals. * * * The court, as we have seen, concluded, from the character of the Liddell patent, that 'the second method'—that is, the method of the Continental Company's machine—was *within the doctrine of equivalents.*' Counsel, however, contends that the Circuit Court, in its decision, virtually gave Liddell a patent for a function by holding that he was entitled to every means to *cause the forming plate to oscillate about its rear edge.* The distinction between a practically operative mechanism and its function is said to be difficult to define. Robinson on Patents, § 144 et seq. It becomes more difficult when a definition is attempted of a function or an element of a combination which are the means by which other elements are connected and by which they coact and make complete and efficient the invention. But abstractions need not engage us. *The claim is not for a function, but for mechanical means to bring into working relation the folding plate and the cylinder. This relation is the very essence of the invention, and marks the advance upon the prior art. It is the thing that never had been done* before, and both the low-

er courts found that the machines of the Continental Company were infringements of it. It is not possible to say that the findings of those courts on that fact or on the fact of invention were clearly wrong, notwithstanding the great ability of the argument submitted against them."

It it plain to be seen, from the quotation made and a careful reading of the Paper Bag Case, that that case is decided upon the doctrine of equivalents. The court gave to the invention a broad interpretation in that regard. All the subsequent cases relied upon are based upon that case, and none of the cases hold what is contended for by complainant. The true interpretation of the word "means," used in the patent, is found in the case of Arnold v. Tyden, supra, wherein the court says:

"Since the decision referred to the Supreme Court, in the Paper Bag Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122, has considered the question of functional claims, and held that claims for means are valid *where the specifications clearly disclose the particular means or mechanism having the function indicated in the claims.*"

[1] From these decisions it is plain that, in construing the word "means" in the patent, there are two effects to be given to it. When the word is used simply to describe connecting parts that bring into working relation the real elements of the machine, the word should have the broadest significance in the application of the doctrine of equivalents; but, where the word is used to describe the real working elements of the patent, it must be limited to the disclosures in the patent and to such equivalents thereof as are justified by the relation which the invention bears to the state of the art. If the word "means" in the patent is designed to have a greater significance than the disclosures in the patent—that is to say, the specific device disclosed and the equivalents thereof—then the patent would be for a function. The only way to uphold the use of the word "means" in a patent is to construe it as above stated. Any other construction would make the patent void.

In determining what an equivalent is, we must look at the machines, or their several devices or elements, in the light of what they do, or what office or function they perform and how they perform it. It is not safe to give much heed to the fact that the corresponding devices in two machines organized to accomplish the same result are different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the devices work, and at the result as well as the means by which the result is attained. We should pay special attention to such portions of the device as really do the work, so as not to give undue importance to other parts of the same, which are only used as a convenient mode of constructing the entire device. In this regard it is appropriate to take a general view of the situation and determine the positions occupied by the invention and the alleged infringing device in the state of the art.

The statute requires that every patent shall contain a short title or description of the invention or discovery correctly indicating its nature and design. Lyndon, in complying with this statute, named his

patent "electro-mechanical water wheel. governor." The application for this patent was filed September 30, 1900, and it was granted March 11, 1902. In a brief for complainant it is said:.

"Lyndon approached many companies manufacturing governors in the attempt to get them to manufacture under his patent, or recognize it, covering a period from nearly four years prior to the grant of the patent up to shortly before the time negotiations commenced with complainant to buy the patent."

[2] These negotiations were shortly before the commencement of this suit. The evidence supports this claim of complainant. Probably the best evidence that a device is for a new and useful invention is that it goes into instant and general use. The fact, unexplained, that a device does not go into instant and general use is at least some evidence that it is not a new and useful invention. There never has been a machine manufactured like that described in this patent. No machine has ever been manufactured under and in pursuance of it. No license was ever issued for any machine to operate under it prior to the commencement of this suit. Since the commencement of this suit licenses have been issued under the patent, but these licenses were issued under such circumstances that they do not carry much weight as to the utility of the invention. The defendant has attacked the patent by expert testimony, and the witnesses testified that the alleged invention of Lyndon is not a practical machine and will not work. The evidence shows, unquestionably, that the Lyndon invention will not work if the mercury cups are used as disclosed in the patent without change.

The defendant's device was installed early in the year of 1909. It is wholly unlike the conception in the Lyndon patent as to the principle of operation and mechanical construction; and this is true, whether considered as a whole, or when separated into elements. It is very much like the machine called in the record the "Bakersfield device." This Bakersfield device was described in a printed publication, namely, the Journal of Electricity, in September, 1897. The defendant's device has been highly successful from the time of its installation, and since then has been actually producing the useful result claimed for the Lyndon patent.

In a brief filed on behalf of complainant it is argued as follows:

"* * * We wish to show to the court a little more particularly that the other prior patents set up, namely, English, Wetmore, Escher-Wyss, and Schaad, were not shown ever to have been put, as to their subject-matter, into practical operation or effect, and are therefore what is known in patent law as mere 'paper patents.'"

The brief in argument states that:

"Such patents reflect nothing more than academic attempts to do something which, as far as the record shows, never was done. * * * It was held in a leading case in this very circuit, by the Circuit Court of Appeals, in an opinion filed October 3, 1910, namely, in Kings County Raisin & Fruit Co. et al. v. United States Consolidated Seeded Raisin Co., 182 Fed. 59, 104 C. C. A. 499, that a patent for the first successful machine to accomplish a new and useful result is not anticipated or limited by a mere paper patent granted years before, although it discloses a theoretically successful machine; such a patent having no place in the prior art."

The brief then quotes from the decision the following:

"The Crosby invention undoubtedly anticipates and describes the whole theory of the Pettit patent, but it does not appear ever to have been put to use, and there is no evidence that any machine was ever constructed under it. It is one thing to invent the theory of a machine; it is quite another thing to invent a successfully operating machine. * * * It is probably unnecessary in this appeal to determine just what effect should be given to the Crosby patent as limiting the scope of the patented invention. It would seem that it was one of those unsuccessful or abandoned inventions which are held to have no place in the art to which they relate. In an analogous case Mr. Justice Brown said: 'His efforts in that direction must be relegated to the class of unsuccessful and abandoned experiments, which, as we have repeatedly held, do not affect the validity of a subsequent patent.' Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118–124, 39 L. Ed. 153. In any view, the Pettit being the first successful machine to accomplish a new result, the claims of the patent are clearly entitled to a broad and liberal construction and to the benefit of the doctrine of equivalence."

The argument thus made by complainant concerning the patents in the prior art applies to the foregoing facts concerning the patent in suit and defendant's device, notwithstanding that defendant's machine has never been patented. The defendant has a successful machine; complainant has a patent on an idea or theory. Under such circumstances complainant is not entitled to that liberal application of the rule of equivalents that a patent is entitled to where the invention was the first to produce a new and useful result.

[3] Shortly after the issuance of the Lyndon patent, a patent was issued upon what, in the argument, was called the automatic control in use by the defendant. This patent upon this automatic control was issued on the 18th day of March, 1902. The issuance of this patent, of course, would not prevent the claim of infringement; but it amounts to a declaration of the patent office that the defendant's automatic control is not an equivalent of the automatic control in the Lyndon patent, and some weight should be given to this interpretation of the patent office. No suit has ever been prosecuted by Lyndon or his successor, except this one, to have it adjudicated that this patent was an interfering patent, or an infringement of the complainant's patent, nor has there been any notification given of his claim. The defendant in this case had a right to assume, by reason of the laches of Lyndon in this regard, that this automatic device was not an equivalent. Aside, however, from these reasons against this automatic device being recognized as an infringement of complainant's patent, I am clearly of the opinion that the two devices are not equivalents.

The complainant argues that the Lyndon patent covers a frictionless type of valve in the by-pass, and asserts that the defendant is infringing that feature of the patent. The Lyndon patent, in the drawing, shows what is known as a "butterfly valve," and in one place in the description of the patent the name "butterfly valve" is used; but nowhere in the claims is there any reference to "butterfly valve," or to a frictionless type of valve. In claims 8 and 9 of the patent a claim is made for "a valve for such by-pass normally held in partly opened position." This is the only claim in the patent concerning the valve. Any valve may be held in partly opened position, and such position

may be the normal position of the valve in the mechanism. In regard to the valve, there is nothing in the description or claims to the effect that any particular kind of valve ought to be used, or that it would be better to use any particular kind of valve. The defendant does not use a butterfly valve, but uses a needle valve in the by-pass, and this needle valve works upon a different principle from the operation of the butterfly valve in the Lyndon patent in this: The butterfly valve is held in partly opened position, so that the water will continually flow past it out of the by-pass, while the defendant's by-pass is normally closed, the needle valve sitting firmly on its seat and only removed to let the water out when necessary to relieve the pressure of the water from the main nozzle upon the water wheel. The butterfly valve in the Lyndon patent, it is said in the description, would be normally half open, so that the amount of water flowing through the by-pass and around the wheel without doing work would be one-half the amount which the by-pass is capable of carrying.

The principle upon which the defendant's device is worked is that no water goes out of the by-pass except to relieve the pressure upon the wheel. The Lyndon patent proposes to control the velocity of the wheel in both directions—that is to say, make it speed up and make it slow down—while the defendant's device primarily is intended only to take the pressure off the wheel, and thereby make it tend to slow down. The defendant's device saves water, while the Lyndon patent continually wastes water. It is argued that the defendant's device, in this regard, is only an improvement upon the Lyndon patent, and this might be well urged if the Lyndon patent claimed a frictionless type of valve. If the defendant's device was manifestly a copy of the complainant's machine, with the exception that the defendant had substituted a dash pot for a solenoid, or a dash pot for a reversible clutch gear, or a needle valve in the by-pass for a butterfly valve, in order to avoid infringement, the court might well look with more favor on the claim that such elements should be regarded as equivalents. But where it is manifest that the whole conception of the alleged infringing device, and all its elements, are different, and where the machines are intended to operate on a different principle, the court could not decide such things to be equivalents without doing violence to the rule of law on the subject.

The complainant has not sustained the claim of infringement. There are other questions of interest in the case, but it is unnecessary for the court to notice them.

The defendant will prepare a decree dismissing the bill, and submit the same to the complainant.