### DAYLIGHT PRISM CO. v. MARCUS PRISM CO.

(Circuit Court, E. D. Pennsylvania. September 20, 1901.)

#### No. 35.

1. PATENTS—ANTICIPATION.

The use of the laws of optics for one purpose cannot be regarded as an anticipation of the use of them for another, however similar, in connection with another and distinct subject.

2. SAME—CONSTRUCTION OF CLAIMS.

The terms employed in a patent to describe the invention are to be interpreted reasonably, with reference to the art to which it relates, and what a mechanic skilled in the art would be able to do with it. While the patent is not to be extended beyond its terms by construction, it is not to be made impracticable within them, having regard to the subject with which it deals, by a too literal and precise interpretation.

3. SAME—APPLICATION—DISCLAIMER.

Where a patentee, whose application had been rejected, in renewing the same, made certain descriptive declarations with regard to his invention to meet the objections of the examiner, this is not to be taken as a disclaimer, intended to narrow the claim, but an argument, to show certain things in regard to it.

4. SAME—INFRINGEMENT—PRISM GLASS.

The Cummings patent, No. 593,045, for "daylight prism glass" for lighting dark interiors, consisting of panes or lights, one side of which is made up of a series of parallel triangular projections or prisms, and the other of parallel and uniform convex projections or lenses placed edge to edge, was not anticipated, and is valid; also *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

Kenyon & Kenyon, for complainant.

Charles Hunsicker and Ernest Howard Hunter, for respondent.

ARCHBALD, District Judge.[1] The striking practical results obtained in the lighting of dark interiors by the use of the plaintiffs' "daylight prism glass" are full proof of its utility, and are strongly persuasive of its novelty as well. This glass is manufactured by the complainants under patent No. 593,045, issued to George K. Cummings November 2, 1897, on an application filed May 28th of the same year, for an improvement in light transmitters. The glass consists of panes or tiles, one side of which is made up of a series of parallel triangular projections or prisms, and the other of parallel and uniform convex projections or lenses placed edge to edge. By the one the rays of light falling from the sky are refracted or deflected into the room or place to be lighted; and by the other these rays, instead of remaining in a single beam, are focused and diffused, thereby utilizing them to the greatest possible extent, and effecting a uniformity of light throughout the whole place. This is not merely the theoretical effect. It is what has been demonstrated by actual installation and use.

The first question is with regard to the novelty of the invention. There is no novelty in the use of a pane of glass as a light transmitter, one side of which is made up of ribs or projections in the shape of prisms, nor is it so claimed. This is found in the Boughton English patent (1880), the Pennycuick (1885), and the Jacobs (1891). It also appears in the three Basquins and the Soper, all of July, 1897, now owned by the Luxfer Company; but, as they are subsequent in date to the Cummings application, they need no further notice. In all of these, however, the surface of the opposite side is plane, while in the Cummings, as already stated, it is composed of a series of convex projections or lenses; and it is in the combination of the two—prisms on one side, and lenses on the other, parallel to and co-operating with each other—that the whole invention consists. This combination, I am persuaded, is not anticipated by anything found in the prior state of the art. The Johnson patent (1866), on which much reliance seems to be placed, is far different. Neither in purpose nor construction does it touch the patent in suit. It is a device for vault lights or covers, to be put in sidewalks or floors where light is to be transmitted directly from above to a vault or area below, at the same time that the space given up to it is freely used for ordinary transit or passage. We may assume that one of the points sought to be gained and actually accomplished by it is an increase of light over that of the ordinary bull's-eye, although no stress is laid on this feature by the patentee; but this is attained by an enlargement of the glass area, and not by any particular form given to either of its surfaces. As constructed, the vault cover is made up of a metallic frame in which narrow strips of heavy glass are set and kept in place by metal girders, the joints being made water-tight by cement, and further pro-

[1] Of Middle district, specially assigned.

tected by weather strips screwed onto the girders and made to over-lap the edges of the glass. It is true that in a cross section of the vault cover, as displayed in the patent, we find the glass represented with a convex surface on one side, and triangular projections on the other, and it is claimed that this anticipates the patent in suit. But the single point of correspondence between the two so seized upon is factitious, while the differences are many and material. The Cummings glass is made in a single piece; the Johnson vault cover consists of separate pieces, with metal girders and weather strips—both opaque substances—in between. The whole purpose of the one is to make use of certain principles in optics by which the rays of light from a narrow sky arc are deflected and diffused into and throughout dark interiors; in the other, no optical effect whatever is attempted, other than simply to let the light from above sift through. In the one, the combination of the curved or convex projections on one side with the triangular or prism projections on the other is everything; in the other, the only significance given to the convex surface is that it affords "a safe and secure foothold for pedestrians," while no mention whatever is made of the pointed or triangular character of the other. Thus not a single idea which is now relied on can be regarded as involved in the former invention, or suggested by it. It is as much a new discovery as if the other did not exist. Much the same is to be said of the Fitzgerald patent (1867), which is also for a vault light. In this the bull's-eye construction is maintained; the upper side of the glass lenses being furnished with irregular protuberances formed by intersecting grooves, while the under side consists of three unequal ridges, more or less pyramidal in shape, with rounded ends and edges, and concave depressions in between. The purpose of having the upper surface corrugated, as declared by the inventor, was to prevent pedestrians from slipping, and to obscure the outline of passing objects, although an increased refraction and transmission of light is also asserted. But the particular feature of novelty claimed for the invention is "the ridge-like protuberances" on the under side. These, it is said, "cause a powerful multifarious refraction and reflection of the light, which, besides diffusing it equally over the vault chamber to be lighted, also enhances the aggregate illumination." Here, in a measure, is an anticipation of the better lighting of dark interiors through the combined effect of lens and prism, but several things are nevertheless to be noted and distinguished. The only use made of it is as to light coming directly from above. There is no deflecting of the light by which that which would not otherwise enter the vault or area is made to do so. No more light, in other words, gets in than would without it. The most that can be said of it is that the light is better diffused after it gets in, use being made of the principle of refraction for that purpose, and that is evidently all that was in the mind of the inventor. It still remains nothing more than a bull's-eye vault light, of better than the ordinary or globular construction because of its diffusing effect; but with that exception it has nothing in common with the patent in suit, and is not remotely suggestive of it. I will not stop to consider the Trollope patent (1872), put in evidence by the defendants, except to say that it

has merely to do with the better setting or securing in place of vault lights. While they are represented in the diagrams accompanying the patent as curved on one side and triangular on the other, I do not see how this circumstance can be seriously urged as having anything to do with that with which we have here to deal. The Hyatt patent (1882) may be somewhat similarly disposed of. Like the Johnson and the Fitzgerald, it is a device for a vault or area cover or grating, and seeks the better lighting of the interior below. This is accomplished, it is true, by what the inventor calls "combination lens and prism glass," having rounded, lens-like projections on one side, and prisms on the other; but the lenses are not elongated into parallel ribs, as in the Cummings patent, and the combined deflecting and diffusing effect of the two surfaces, which is the whole of that patent, does not seem to have been thought of. The effect of the lenses, as stated by the inventor, is to enlarge the light receiving surface; and of the prisms, to obtain a correspondingly enlarged distributing surface, to take care of the increased light volume; and the whole mind of the inventor in employing this combination is directed to the construction of a grating to be used in the front or rear areas of buildings, for the direct, and not the deflected, transmission of light into them. While this may be a branch of the same art as that of the Cummings patent, it is sufficiently separate from it to be regarded as a substantially different one. At the same time, it must be confessed that, if there has been any anticipation of that which is involved in the patent in suit, it is to be found here. The Doig (English, 1859), the Pulford (English, 1875), and the Richardson (1896), in my judgment, have no relevancy. They all relate to a plainly distinct and different art,—that of lamp chimneys,—and, whatever use may be made in them of similar principles of optics, either singly or in combination, to those employed by Cummings, they cannot on that account deprive him of the results which he has obtained by the exercise of his inventive genius in lighting the interiors of buildings by the deflected light of the sun. The laws of optics under all circumstances are the same, and the use of them for one purpose cannot be regarded as an anticipation of the use of them for another, however similar, in connection with another and distinct subject.

The question of anticipation being thus disposed of, that of infringement remains. That the defendants at the time this suit was brought were manufacturing a glass which was a direct imitation of one pattern of that manufactured by the plaintiffs, under the Cummings patent, is established by an inspection and comparison of the two, as found among the exhibits (Exhibits 5 and 10). Persuasive evidence also of an express intent to copy the plaintiff's glass appears in the advertisement taken from the Philadelphia Times, and in the illustrated cut on the outside of the defendants' circulars, in both of which the glass which the defendants offer to the public is represented as made up of a combination of parallel convex projections on one side, and prisms on the other,—the very feature which distinguishes the patent in suit. Further than this, in the body of these same circulars not only have the defendants adopted the line of argument found in similar circulars sent out by the plaintiffs, but they have ab-

stracted whole phrases bodily from them, as though they did not hesitate to appropriate both the ideas and the efforts of their competitors. To obviate the effect of this showing, the defendants contend that neither the glass which the plaintiffs manufacture, nor that which they themselves have hitherto manufactured in imitation of it, falls within the terms of the Cummings patent. That patent, as they claim, requires that the convex projections which make up one side of the glass be placed edge to edge, so that the arcs which bound them shall intersect with mathematical exactness, and leave absolutely no intervening spaces of any character in between, while the surface of the glass which has been put in evidence against them, they assert, is sinusoidal; that is to say, is composed of alternate convexities and concavaties, making a sinuous or undulating line. In support of this construction of the patent, it is pointed out that the patentee, in describing his invention, specifies that:

"The convex projections are placed edge to edge, so that the end or edge of one convex surface meets the end or edge of the adjoining surface, and so on; or, to describe this feature in other words, the convex surface of each projection is bounded by an arc of a circle, the arc of each projection joining or intersecting the arcs of the adjacent projections, as a result of which there are no intervening spaces between the convex projections, and these projections cover the entire face of the plate."

But this quotation from the specifications is to receive a reasonable interpretation. It does not mean that the edges must meet, or the arcs intersect with the precision insisted upon, and no one versed in the art would so understand it. While a patent is not to be carried beyond its terms, it is not to be made impracticable within them, having regard to the subject with which it deals. Molten glass will flow more or less in molding, and it is impossible to handle it so that it will not; and even in cut glass the edges and intersections, while somewhat more sharply defined, cannot be fashioned to a hair; and the same is true of every material, even the hardest. To require a nicety of construction, such as is contended for, would practically bar any manufacturing under this or any other similar patent. The terms employed to describe an invention are to be interpreted with reference to the art to which it relates, and what a mechanic skilled in the art would be able to do with it. All that is fairly meant in the patent in suit is that the convex ribs on the one side and the prisms on the other jut up against each other, so as to leave no substantial intervening spaces in between. A glass having a distinctly sinusoidal or undulating surface no doubt does not infringe upon it; but that in which the circumscribing convex arcs intersect as closely as the character of the material or the skill of manufacture will permit, certainly does. It has not escaped my notice in reaching this conclusion that the patentee, through his counsel, in renewing his application for the patent, which was at first rejected, specifically declared that the circumscribing arcs touched at their edges, "so as to leave no intervening spaces of any kind whatever, either flat, concave, or otherwise." But this, it is to be remembered, was advanced by way of argument, and is not to be carried beyond the occasion which gave rise to it. The examiner had decided that the invention of Cum-

mings was anticipated by the Johnson patent, which showed a set of glass strips convex on one side and triangular on the other, which, as he said, it involved no exercise of the inventive faculty to unite in one integral plate. To meet this, it was pointed out that even though "the Johnson prisms were placed side by side without their intervening girders, and made integral, the convex side would show a number of connections separated at their bases by plane surfaces, which would be inoperative for the purpose desired," and would have no prismatic projections opposite them. This is not a disclaimer, but an argument, and it is not to be separated from the connection in which it appears. The particular part of it which is now brought forward was not intended to narrow the claim of the applicant, but merely to show that the Johnson patent did not touch it, and could not be transformed into it, and that was all. So viewing this patent, I am of opinion that the glass manufactured by the defendants (Exhibit 5) is an infringement. The defendants seek to escape this result, as already intimated, by attempting to show that it has a sinuous or undulating surface, and not one made up of intersecting convex projections. But the experiments put in evidence by the plaintiffs demonstrate the contrary. By an appropriate mechanical device the actual outline of the glass, as well as an exaggerated form of it, in which the perpendicular ordinate is three times magnified, have been traced and registered. Plaintiffs' Exhibits 43 to 47. In the exaggerated form the convexity of the ridges and the character of the intersections are clearly brought out, but both are sufficiently evident where the relation between the two dimensions is maintained. Indeed, it is manifest that whatever appears in the one must exist in the other, because the exaggeration does not create or change anything. It merely magnifies what is already there, so that we can perceive it. Nor is it any answer to this to say that in the glass manufactured by the defendants (Exhibit 5) the convexity is too slight to be made the subject of a charge of infringement. The laws of optics do not vary, and they respond to the smallest influences. And, however slight the convexity in the pattern exhibited, it is sufficient, according to the evidence, to produce the effect which is the especial feature of the patent and protected by it. Otherwise, why did not the defendants make the surface of their glass perfectly plane?

Without further discussion, I hold the patent to be valid, and that it has been infringed. The extent of the infringement may not be great, as the defendants have ceased to manufacture glass of this character, and substituted one of their own design, with concave depressions instead of convex ridges. If so, they will have the less to account for. Let a decree be drawn sustaining the bill and referring the case to a master.