DALTON ADDING MACH. CO. et al. v. ROCKFORD MILLING MACH. CO. et al.

(District Court, N. D. Illinois, E. D.   October 8, 1918.)

No. 84.

1. PATENTS ⬤➞69—VALIDITY—PRIOR PUBLICATION.
    A prior patent for a machine, although the machine may not be practically operative, may operate as a prior publication, which will invalidate a subsequent patent to another, which embodies the same principle in an operative machine.

2. PATENTS ⬤➞32—IMPROVEMENT—PRESUMPTION FROM GRANT OF SEPARATE PATENTS.
    There is a presumption, from the grant of separate letters patent for two improvements on the prior art, that there is a specific difference between the inventions.

3. PATENTS ⬤➞49—SUIT FOR INFRINGEMENT—PROOF OF UTILITY OF PRIOR STRUCTURE.
    As against complainant in an infringement suit, the presumption of utility of the machine of a prior patent is greatly strengthened by the fact that complainant for many years represented it to be useful.

4. PATENTS ⬤➞66—ANTICIPATION—OPERATIVENESS OF PRIOR MACHINES.
    The machine of a patent relied on as an anticipation is not to be deemed inoperative, if it can be made to work by a slight alteration.

5. PATENTS ⬤➞46—ANTICIPATION—OPERATIVENESS OF PRIOR DEVICE.
    The test of operativeness is to ascertain whether the patented device does, even imperfectly, perform the things claimed for it in the methods described.

6. PATENTS ⬤➞49—PRESUMPTION OF VALIDITY—PRIMARY INVENTION.
    The presumption of validity of a patent for a primary invention, covering a machine absolutely new in the art, is much stronger than in the ordinary case.

7. PATENTS ⬤➞328—VALIDITY AND INFRINGEMENT—ADDING MACHINE.
    The Hopkins patent, No. 1,039,130, for an adding and writing machine, as to the adding machine claims is valid, but is for an improvement on a prior machine, and limited to the precise structure shown; also held not infringed by a machine made under another improvement patent.

In Equity.   Suit by the Dalton Adding Machine Company and the Addograph Manufacturing Company against the Rockford Milling Machine Company and others.   On final hearing.   Decree for defendants.

Banning & Banning, of Chicago, Ill., for plaintiffs.
Miller, Chindahl & Parker, W. Clyde Jones, and Lincoln B. Smith, all of Chicago, Ill., for defendants.

SANBORN, District Judge.   This is an infringement suit on patent No. 1,039,130, issued to the Addograph Company September 24, 1912, on application filed January 24, 1903, by Hubert Hopkins, for a patent on an adding and writing machine.   The defenses are noninfringement and invalidity in part.   A general idea of the invention may be had by consulting Dalton Adding Machine Co. v. Moon-Hopkins Billing M. Co. (D. C.) 223 Fed. 51;   Moon-Hopkins Billing

Mach. Co. v. Dalton Adding Mach. Co., 236 Fed. 936, 150 C. C. A. 198. The patent contains 284 claims, of which 44 are in suit, relating only to the adding machine feature, and not to the typewriter.

The really important question is whether Hopkins is to have the credit of converting the Burroughs machine, with its 81 keys, into a 10-key machine, which will do the same work, or whether a prior inventor, Helmick (No. 630,053, of August 1, 1899), is entitled to this important advance in the adding machine art. Very briefly stated, this advance consisted in the employment of a movable stop field, by which all but 10 of the Burroughs 81 keys, and all but 10 of the same number of connections between keys and stops, are dispensed with. The question of priority depends on whether Helmick produced an operative machine, or whether the 10-key principle was known to him, or made the subject of a printed publication by him, before Hopkins entered the field.

[1] Rev. St. § 4886, as amended March 3, 1897 (Comp. St. 1916, § 9430), provides that the inventor of a new and useful machine, manufacture, etc., "not known or used by others in this country before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof, or more than two years prior to his application," may obtain a patent therefor. Now, it is obvious that the only question in relation to a machine cannot be whether it is practically operative in all its parts as held in Besser v. Merrilat Core Co., 243 Fed. 611, 156 C. C. A. 309 (where the inventor's conception was fundamentally defective), since the very gist of the discovery may be a new subcombination, or an improvement designed to be added to an already established machine. The new conception might be complete in itself, and the patent covering it operate as a prior publication, or as showing prior knowledge or use, although the patentee might make a mistake in combining it with such prior machine, so that the combination would not operate.

This distinction is well illustrated by the Helmick patent referred to. It might fully describe the mechanism by which the 81-key operation of Burroughs was changed into the 10-key operation, and yet fail to make a fully operative adding machine by not correctly describing the old system of carrying wheels or of recording the result. Helmick made a mistake in one of his patent drawings, so that a machine built exactly like the drawing shows the wrong figures. But he still described an operative mechanism by which the use of 81 keys is reduced to 10. Therefore he ought not to be deprived of the credit of having discovered a new principle, and of exhibiting it in a prior publication, because he may not have produced a complete adding machine. In the Besser Case the device could not be made to work by the use of galvanized iron in an expansible and contractible core, because galvanized iron possesses no resiliency, and so was radically defective. If this be the proper conclusion, it is obvious that the novelty of Hopkins, coming later than Helmick, does not reside broadly in a 10-key machine, but merely in his particular development of the 10-key principle.

"If one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute. But if the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs." C. & N. W. Ry. Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053.

[2] There is a presumption, from the grant of separate letters patent for two improvements on the prior art, that there is a specific difference between the inventions. Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23, 23 Sup. Ct. 521, 47 L. Ed. 689.

"If the combination constituting the invention claimed in the subsequent patent was new, or if the ingredient substituted for the one withdrawn was a newly discovered one, or even an old one performing some new function, and was not known at the date of the plaintiff's patent, as a proper substitute for the ingredient withdrawn, it would avoid the infringement, as a new combination or a newly discovered ingredient substituted for the one omitted." Gould v. Rees, 15 Wall. 187, 21 L. Ed. 39; Ries v. Barth Mfg. Co., 136 Fed. 850, 69 C. C. A. 528 (7th Circuit).

The objection of the inoperativeness of the Helmick machine is presented under quite unusual circumstances. The following facts appear in evidence:

The plaintiffs owned the Helmick patent from 1903 until it expired. After the purchase of the patent in 1903, the plaintiffs caused it to be reissued, with certain amendments to the specification, and with additional and broader claims, thus representing and asserting the patentability of the invention (and the operativeness of the disclosure), and receiving from the United States a grant based upon such representation. From 1906, when the first Hopkins machine was sold, until 1913, when the Hopkins patent issued, the plaintiffs' machine was marked and sold under the Helmick patent. The plaintiffs thereby held out the patent to the public as a valid patent, and gave warning to the public and to any possible competitors that they asserted and claimed a monopoly under that patent. The plaintiff Dalton Adding Machine Company, under its former name of Adding Typewriter Company, was the defendant in a suit brought by the Standard Adding Machine Company for infringement of certain patents, and in that suit defended on the ground that the Hopkins machine was, in general, the machine of the Helmick patent, modified to employ the swinging type segments and the swinging rack segments of the Burroughs patents.

The present plaintiffs brought suit against the Moon-Hopkins Billing Machine Company for an infringement of the Helmick patent. In that suit the plaintiffs alleged that after they had become deeply involved in the enterprise of manufacturing and selling inventions of the said Hubert Hopkins, and had expended in such enterprise a large sum of money, they learned of the existence of the Helmick patent, and found that the inventions and improvements sold to them by the said Hubert Hopkins were subordinate to, and built upon, and embodying the plan and principle of operation described and claimed in, the said Helmick

patent, and that it was necessary to purchase the said Helmick patent in order to protect their business, and to prevent the loss of the large sums of money that they had already invested and expended. That suit was begun in July, 1911, and was prosecuted until after the issuance of the Hopkins patent, and after the institution of another suit against the same defendants on the Hopkins patent, when the suit on the Helmick patent was voluntarily dismissed by the plaintiffs. During the prosecution of the Hopkins application in the Patent Office the Helmick patent was cited as a reference on many claims, some of which were rejected on such reference; but the applicant made no contention that Helmick was inoperative.

[3] While these facts did not, strictly speaking, create an equitable estoppel in favor of the defendants, because they were not in the same business at the time, and were not misled by the acts of the plaintiffs, yet they do greatly strengthen the presumption of operativeness, and place the plaintiffs in inconsistent positions, from which it is difficult to see how they can be extricated. Rice-Stix Dry Goods Co. v. J. A. Scriven Co., 165 Fed. 639, 91 C. C. A. 475; Stockland v. Russell Grader Mfg. Co., 222 Fed. 906, 138 C. C. A. 386. It is a most pregnant proof of utility that plaintiffs for years represented the Helmick patent to be useful. Works v. Betts Machine Co. (C. C.) 27 Fed. 301.

In addition to the above reasons for believing the Helmick device operative, an actual trial of a machine constructed by a workman not skilled in adding machines shows that the device does correctly make the proper addition. It truly shows the numbers struck by the keys, and the final sum. It is slow, difficult to operate, and easily put out of order; but it will correctly add. This is all that is requisite to show operativeness, in the view of the patent law. The correction of the imperfect drawing was clearly a matter requiring only mechanical skill, as appears from inspection of the patent, and from the fact that a workman unskilled in the adding machine art made an operative machine from the specifications and drawings.

[4] A patent relied on as an anticipation is not to be deemed inoperative, if it can be made to work by a slight alteration. Dashiell v. Grosvenor, 162 U. S. 425, 16 Sup. Ct. 805, 40 L. Ed. 1025. In that decision the question is discussed by Justice Brown, who says:

"It does not seem probable that the patentee would have taken out a patent for a wholly inoperative combination, especially in view of the fact that there were at least half a dozen operative devices already in existence upon which his was claimed to be an improvement. Inoperative devices are frequently set up as anticipations, but they are usually such as have proven to be so far failures that the inventor has not taken out patents for them, and are resuscitated for the purpose of showing that other machines similar to the one patented have been invented before. The very fact that a machine is patented is some evidence of its operativeness, as well as of its utility, and where a model is constructed after the design shown in a patent which is not perfectly operative, but can be made so by a slight alteration, the inference is that there was an error in working out the drawings, and not that the patentee deliberately took out a patent for an inoperative device."

"Persons possessed of the most brilliant conceptions are sometimes the poorest mechanics." Packard v. Lacing Stud Co., 70 Fed. 66, 16 C. C. A. 639.

[5] Imperfections in a machine, not affecting the substance of the invention, and which are curable by mechanical skill, do not render the patent inoperative. Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; The Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 788, 31 L. Ed. 863.

"The test of operativeness is to ascertain whether the patented device does (even lamely and imperfectly) perform the acts claimed for it in the method described, and (perhaps) for the reasons given." Engineer Co. v. Hotel Astor (D. C.) 226 Fed. 779; Id., 226 Fed. 949, 141 C. C. A. 553.

[6] The Helmick invention meets this test. It describes a machine absolutely new in the art, and is clearly a primary invention. Such an invention should not be held inoperative without ample proof. The presumption of validity is much stronger than in the ordinary case. Von Schmidt v. Bowers, 80 Fed. 121, 25 C. C. A. 323; Scott v. Fisher, 145 Fed. 915, 76 C. C. A. 447. It requires but slight evidence of successful operation to avoid the defense of want of utility of a patent sued on. Thayer v. Wold (C. C.) 142 Fed. 776; Wold v. Thayer & Chandler, 148 Fed. 227, 78 C. C. A. 350. Under the facts shown in evidence, it should require very strong proof to avoid the patent.

[7] The Helmick patent being valid, both Hopkins and Sunstrand (under whose patent the alleged infringing machine is made) are to be deemed improvers on Helmick, and each entitled to his own form, if there is a patentable difference between them. As already seen, Helmick's invention consisted in the use of a movable stop field, by bringing the 10 keys into co-operative relationship with the 81 stops. The chief difference between Hopkins and Sunstrand is that the former employs a direct and immovable series of connecting links between keys and the rows of stops, and a like series between the respective rows of stops and the printing device, while Sunstrand employs in each instance a series of connecting links, which are fixed with relation to the keys, but movable with relation to the field of stops. Each has thus a different mode of operation, a patentable difference which is enough to distinguish the two forms, and to show noninfringement. Being improvers on Helmick, each is entitled to his own construction.

The bill should be dismissed, with costs.