Littleton, Judge,
delivered the opinion of the court:
Plaintiff alleges unauthorized use under the act of June 25,1910, 36 Stat. 851, as amended by the act of July 1, 1918, 40 Stat. 704, 705, by the War and Navy Departments of the United States of a patent granted to him in 1919, as set forth in the findings, for a certain aeroplane retractable landing gear. Defendant first filed a plea in bar claiming that if it had used any feature of plaintiff’s patent it had & license to do so. This plea was overruled without prejudice and is now renewed. The other contentions of the defendant upon which it bases its defense that plaintiff is not entitled to recover are set forth in the preliminary statement preceding the findings of fact. Upon the whole record we are of opinion that plaintiff is not entitled to recover for several reasons which will hereinafter be mentioned.
1. If the features of the patent in suit, as expressed in the claims, alleged to have been infringed by the defendant can be held to involve invention, it is obvious from the facts that the grant under such claims is so narrow, in view of the prior art, that none of the features or elements of the aero-plane lauding gear frame structures of the defendant can be held to have infringed plaintiff’s patent. French patent, 111,574, to Penaud and Gauchot (Finding 29) discloses a retractable landing gear, the frame members of which are “housed in the general shapes of the nacelle”, and points out that “impressions in the surface of the nacelle receive the different pieces of these legs.” Given its ordinary meaning, we think this language discloses to a man skilled in the art the use of openings in the fuselage which are automatically closed, at least to the extent that the fuselage openings on the defendant’s aeroplanes are closed by the landing-gear *378 frame members alleged to infringe when the landing-gears are retracted and the landing-gear frame members lie within such impressions. The language of the specification of this patent also discloses to a man skilled in the art the formation of the housings for a retractable landing-gear frame of an aeroplane, the openings of which housing substantially conform to the shape of the struts of the landing gear. We cannot assume that the provision for “impressions in the surface of the nacelle” to receive the landing-gear frame-members when the landing gear is in a retracted position means impressions much larger or of different shape than the landing-gear frame members which such impressions are desired and intended to receive. The usual and ordinary meaning of such language is that such impressions in the fuselage to receive the landing-gear frame struts, when in a. retracted position, would substantially conform to the dimensions of the landing-gear struts. This is especially true in this instance, inasmuch as the specification of this patent also points out that the place of the housing of the landing-gear frame members may be surrounded with coverings or suitable troughs.
Moreover, with reference to infringement, the file wrapper discloses such limitation with reference to claims 3, 10, 11, 13, 14, 17, 18, and 19 relating to the closure of the fuselage openings when the landing gear is in a retracted position that plaintiff is estopped to allege infringement by the Government structures disclosed and described in the findings. The broad claims originally made by plaintiff were rejected as not involving invention and as being anticipated. Thereafter, during consideration of the application, the claims were reframed and certain new claims were submitted. Upon further consideration certain claims with reference to a closure of the fuselage openings upon retraction of the landing gear so as to provide a substantially continuous outer fuselage surface, were rejected as being anticipated by the U. S. patent to Francis referred to in finding 25. This action was taken prior to and on July 9, 1918. Thereafter,, on September 20, 1918, plaintiff filed amendments of certain claims and added three new claims which afterward became claims 17, 18, and 19 of the patent in suit, and in a written *379 statement filed in support of the allowance of the claims over Francis stated: “The Francis construction is impractical in that his door does not form a flush closure and is. closed by the operator after the storing of the chassis and independently of such storing operation. A favorable consideration of the claims presented herein is therefore respectfully asked.” It will be seen therefore that plaintiff during prosecution of his application, which matured into the patent in suit, interpreted his claims relating to the matter of closing the fuselage openings as being limited to such, a closure as would form a strictly flush fuselage surface. It. is well established that a representation made to secure a patent narrows the grant, operates as a limitation, and is binding on the patentee; and that limitations imposed by an inventor, especially those introduced after rejection or proposed rejection of certain claims, must be strictly construed against the inventor and be looked upon as disclaimers. A limitation is not rendered ineffective because unnecessary and self-imposed.
2. Claims 3, 10, 11, 13, 14, 17, 18, and 19 are invalid for the reason that, in view of the prior art, they involve no more than the exercise of mechanical skill and are anticipated by U. S. Patent No. 1,083,394, January 6, 1914, to Francis (Finding 25) and French patent 474,585 to Lawrence (Finding 32). The patent does not, as plaintiff contended before the Patent Office, show a closure for the fuselage opening, into which the landing gears are retracted,, which is operated manually by the pilot after the landing gears have been retracted. On the contrary the Francis patent discloses a closure for the fuselage opening which is operative automatically upon the extension or retraction of the landing gears and also discloses that this closure, when-the landing gears are retracted, forms a substantially continuous outer fuselage surface. During the trial of this case plaintiff did not contend that the Francis patent failed to show an automatic closure, but raised a question as to the operativeness of the closure for the fuselage opening disclosed in the specification and drawings of the Francis patent. This objection was directed to drawing, Fig. 3, of the Francis patent and it was based upon the fact that in this- *380 •drawing, the bearing arm 36 and the connecting cable for •automatically closing the opening in the fuselage are on one ;side of the plane of rotation of the wheel and the hinge of the door is attached to the fuselage on the opposite side. No contention was made or proof submitted at the hearing that the closure for the fuselage opening described in the drawings and specification of the Francis patent operated or was intended to be manually operated by the pilot after the landing gears were retracted. With reference to the operativeness of the structure shown in Fig. 3 of the Francis patent, defendant’s expert witness Browne was asked, upon cross-examination, the following question: “I ask you as a patent •expert whether it would be possible in any way to have that wheel come down to the ground completely enclosed between its cord and its bar if that were the case, and ask you to tell where the hinge is located. Also, now that you have interpreted that patent in that way [as functioning automati-•callyj I would like you, because it is a very important thing, to state whether there is anything in the specification which corroborates that point of view.” To this question the witness replied “There is nothing in the specification. I, myself, have sufficient doubts as to its operativeness so that I did not refer to this patent.” This was the extent •of the testimony of this witness concerning the non-opera-tiveness of the structure and that opinion was based wholly upon inferences apparently drawn from the location of the hinge of door 37' shown in drawing, Fig. 3. The •court is not bound by expressions of opinions by expert witnesses. Head v. Hargrave, 105 U. S. 45; The Conqueror, 166 U. S. 110. Expert testimony as to the meaning of patent ■specifications is only permissible to enable the court to understand the specification, and if the court understands the specification without such testimony it is not necessary. Cf. Kohn v. Eimer, 265 Fed. 900. An expert may not be ■permitted to state that the omission of a connecting mecha-rnism would be a “fatal fault.” It is proper for the witness to describe the results of omission of the connecting mechanism but his opinion that the omission is a fatal fault goes beyond the province of an expert. National Cash-Register Co. v. Leland, 94 Fed. 502. A mistake in a particular draw *381 ing does not render a patented device inoperative or prevent the court from considering the entire disclosure in the specification and other drawings of the patent as a proper reference in the prior art if, by considering the language of the .specification and the drawings, it is clear what the patentee intended by the language used in the specification. As set -forth in Finding 25, it is clear that the Francis specification .has reference to the closing of all the apertures in the fuselage and relates to the rear landing gear, as well as to the landing gear in the forward portion of the plane. The language of the specification here pertinent, is, “when the ground wheels have been telescoped in the body the apertures ■of the chambers may be closed by doors 31' * * * .” jn other portions of the specification the patentee speaks of the “front wheels,” the “forward wheels,” and the “rear wheels.” This language, when considered in connection with Fig. 2, as well as Fig. 3, of the patent, clearly discloses to a man ¡skilled in the art a closure for the fuselage opening which is operated automatically upon the extension or retraction of the landing gears. It is also clear from consideration of .the specification and drawings of this patent that it would be within the skill of an ordinary mechanic to hinge the -door 37' shown in Fig. 3 on the same side of the plane of .rotation of the front wheels as the operating cable. See Diales Press Guard Mfg. Co. v. American Hardware Gorp., 247 Fed. 338, 339, wherein it was held that although a prior patent showed the “gates swinging the wrong way the mistake is one which any mechanic could correct and does not .affect the extent of the disclosure [of the prior art] to the -skilled man.” From the specification and drawings of the .Francis patent we think it would also clearly be within the .skill of an ordinary mechanic to place the front wheels of the aeroplane on the inside of bearing arm 36 as such wheels are shown in drawing Fig. 2 or to hinge the door 3T' on the inside of the fuselage sheathing so that the door would lie -wholly within the pocket and flush with the outer surface -of the sheathing, thereby providing a perfectly smooth fuselage surface when the landing gears are in a retracted position. In this connection see, also, finding 32 with reference ;to the French patent to Lawrence issued December 12, 1914. *382 The terms employed in a patent to describe the invention are to be interpreted reasonably with reference to the art to which it relates, and what a mechanic skilled in the art would be able to do with it. While a patent is not to be extended beyond its terms by construction, it is not to be made impracticable within them, having regard to the subject with which it deals, by a too literal and precise interpretation. Daylight Prism Co. v. Marcus Prism Co., 110 Fed. 980. Inoperativeness of a structure is always open to scrutiny. Looking alone for the moment to the exact arrangement shown in Fig. 3 of the Francis patent, we think it is not a fact, assuming that the cord which operates to close the door 37' is attached at a point on the door which would cause the cord when the landing gear is extended to extend under the tread of the wheel, that complete failure of the landing wheel to function would result from the cord extending across the tread of the wheel at the moment of landing. At most this would do no more than cause a momentarily slight braking effect alike on both wheels, and, as the cord extending from the door 37' to the axle of the wheel is shown as being longer than the radius of the wheel, such cord upon landing would immediately pass to the rear of the point of contact of the wheel with the ground and thereby permit the wheel to function. Moreover, it may not be assumed that the point of attachment of the cord shown in Fig. 3 to the door 37' is so positioned that such cord extends under the wheel at a point of contact with the ground upon landing. Fig. 3 is a cross-sectional detail of a portion of the aeroplane body and is, we think, susceptible to the interpretation that the cord is attached to the door 37' at a point rearwardly of the point of contact of the wheel with the ground upon landing. Courts have never hesitated to-define inoperativeness in a patent as a condition far removed from perfect or ideal operativeness. In such case we are not dealing with an exact science but with a mental concept in which some latitude must be extended to the physical and mechanical means of its accomplishment. Whenever, therefore, a device is objected to as inoperative because of a trivial fault in its showing or where a more obvious change would not differentiate the principle of the device but simply cor *383 rect a mechanical inconvenience, the courts should not take a narrow view but, looking at substance rather than form, resolve such imperfections in favor of the patent. A patent should not be held invalid or inoperable for indefiniteness where the principle of operation is made clear and a skilled mechanic in the art would have no difficulty in following the directions of the patent. A patentee of a machine is not limited to the precise position and dimensions of parts shown in his drawings where it would render the device, or machine, inoperative and the specification shows that it was the intention so to proportion the parts as to produce a stated effect when the machine was operated. Johnston v. Woodbury, 109 Fed. 567. A device is not to be held inoperative “merely because a slavish adherence to the drawings develops obstacles which may in many cases be overcome by the exercise of common sense and ordinary mechanical skill.” Manhattan Book Casing Machine Co. v. Fuller Co., 204 Fed. 286. Dalton Adding Machine Co. et al., v. Rockford Milling Machine Co. et al., 253 Fed. 187, 191. In Sparks-Withington Co. v. Jay, 270 Fed. 449, 452, the court, in speaking of a patent urged as anticipatory, said: “We think the Tice device,- as disclosed by him, cannot be pronounced inoperative in a patentable sense, although under many conditions likely to be met it would fail to function, and thus could not be successful commercially. But, testing the disclosure as we think we should by the rules applicable to a patent, the device, as described, did not lack invention merely because the inventor did not successfully bring his art to the highest degree of perfection, nor because, without changes in or additions thereto, it could not be successful commercially.” In Hildreth v. Mastoras, 257 U. S. 27, 34, the court, in speaking of inop-erativeness, said, “The machine patented may be imperfect in its operation; but if it embodies the generic principle, and works, that is, if it actually and mechanically performs, though only in a crude way, the important function by which it makes the substantial change claimed for it in the art, it is enough. Telephone Cases, 126 U. S. 1, 535; Mergenthaler Linotype Co. v. Press Publishing Co., 57 Fed. 502, 505.”
*384 Francis made no claim in his application which matured-into the patent 1,083,894 to him with reference to the closure-for the fuselage opening, for the reason, which seems obvious,, that the matter of providing means for the automatic closure of the fuselage openings did not, in view of the state of the art, involve more than mechanical skill. Cf. Hazeltine Corp. v. Radio Corp. of America, 52 Fed. (2d) 504, 510, and Hazeltine Corp. v. Sears Roebuck & Co., Inc., 19 Fed. (2d) 238, 240, 241.
3. Assuming that plaintiff’s patent was valid, although we have held to the contrary with reference to certain claims in (2) above, the record establishes that the defendant acquired a non-exclusive license to use the features of plaintiff’s patent with reference to automatic closure of fuselage-openings when the landing gear is retracted, as expressed in claims 3, 10, 11, 12, 13, 14, 15, 17, 18, and 19, under Navy Department Contract No. 52031 of October 28, 1920.. The circumstances of the execution of this contract by plaintiff and the Government and the pertinent terms of the contract are set forth in findings 12 and 13. The contract was initiated by plaintiff and the terms agreed to involved payment to plaintiff of $3,000 for a set of Van Dykes for a. retractable landing gear, and $3,000 for a retractable landing gear constructed in accordance with those Van Dykes. In. accordance with the contract, plaintiff furnished defendant with a set of Van Dykes which showed in detail the claimed invention of the patent in suit as expressed in the claims mentioned. A Van Dyke is not simply a drawing or blue print but is an engineering drawing of such character that-any number of additional working blue prints may be readily produced therefrom. The only useful purpose served by a set of Van Dykes would be to enable the Government to make blue prints in any desired quantity for construction of aeroplanes, or parts shown thereon, and we think it is clear that the Government would not have paid the sum mentioned for a set of drawings if it had not been understood and intended that the Government could and would use such drawings for the purpose and in the manner that drawings of that character are designed to be used. That *385 such use was intended and was authorized is shown by paragraph 4 of the contract, in which plaintiff agreed to indemnify the United States, and all officers and agents thereof, for all liability of any nature or kind on account of the infringement of any patent rights granted by the-United States that might affect the adoption and use of the article contracted for, namely, the retractable landing gear for aeroplanes, or the work done under the contract, namely, the construction of a landing gear and the preparation and-sale to the United States of the set of Van Dykes for the retractable landing gear. In Art. 4 the plaintiff agreed to-protect the Government against the use of all patent rights-granted by the United States that might affect the adoption or use of the articles contracted for, and it would be a. strained and unreasonable construction of this contract to* hold that this provision would not, likewise, apply to plaintiff’s patents. No particular form of language or execution is necessary to grant a patent license. Patent owner’s language or conduct indicating consent to its use constitutes a-license for the patent. See De Forest Radio Telephone Co. v. United States, 273 U. S. 236.
The facts with reference to other contracts between plaintiff and the Government mentioned in the findings and with, reference to plaintiff’s offer in September 1920 to sell to the Government a non-exclusive license to use his patent for Army and Navy purposes only for one dollar do not, in view of the limitations and conditions disclosed, establish a general non-exclusive license to the Government.
4. The next question relates to the alleged infringement of claim 5 by the defendant’s landing-gear structures on the-Loening Amphibian aeroplanes and the PW-8 aeroplanes-Plaintiff’s contention with reference to these infringements is adequately disposed of by finding 49. It is clear that the-defendant’s landing-gear structures as used on the Loening Amphibian and the PW-8 aeroplanes do not infringe any of' the claims of the patent in suit and if any feature of such constructions could be held to be covered by claim 5 it would be necessary to broaden such claim far beyond all permissible limits and to such an extent that it would be clearly invalid. *386 under the prior art. Claim 5 is a combination of old ele.ments and plaintiff cannot claim infringement of the use of •only one element of the combination. A swinging retractable landing-gear frame with an axle rigid therewith was old and had been used as early as 1912. See Flugsport, .a German publication issued September 11, 1912, and ."Fig. 3 thereof containing an article by Von Oskar Ursinus, a civil engineer, describing the first German hydro-aero-plane race at Heiligendamn in 1912 — Defendant’s exhibit .D-25-26. A strut forming a pivot connection with a retractable landing-gear frame was old and such an element is disclosed in pi'ior structures. The use of a single diagonal strut member in connection with the retractable landing-gear to take both compression and tension strains during landing was also old. See finding 30 with reference to the French patent to Monin and Fouchalt, and the German patent, “Kondor” Aeroplane Works at Essen on the Euhr. Although in the prior structures the diagonal strut had the same function as plaintiff’s diagonal strut no prior art structure shows the use of a single diagonal in connection with a quadrilateral landing-gear frame on which both landing wheels are .mounted, and neither does any of the defendant’s alleged infringing structures contain this feature. The shock-ab•sorbing mechanism supporting the main portion of the aero-plane on the chassis frame was not new. In these circumstances it is clear that Claim 5 has not been infringed, and, 'to say the least, it is extremely doubtful if anyone familiar with the prior art would have needed to do more than exercise mechanical skill to combine known elements and structures to attain the combination exhibited in this claim. In •other words, it would be difficult to say, in view of the prior art, that this aggregation of old elements involved the exercise of inventive genius rather than mechanical adaptation.
5. Upon the assumption that the claims of plaintiff’s patent are valid, the last question is whether claims 1, 2, 4, and !6 were infringed by the United States to such an extent as would entitle plaintiff to compensation for unauthorized use within the meaning of the Act of June 25,1910, as amended ’by the Act of July 1, 1918, by reason of the facts set forth in the second paragraph of finding 42 relating to the Ver- *387 ville-Sperry aeroplanes and whether claims 3,10, 11, 13, 14,. 17, and 18 have been infringed by reason of the facts set forth in the last paragraph of finding 42 with reference to fairings attached to the landing-gear struts and aprons attached to the wheels by a pilot of one of the Verville-Sperry aeroplanes without authority or direction of the United States.
In this instance it is clear that no basis for the allowance-of damages against the United States is established. No-facts are alleged or shown which would indicate any profit to the manufacturer of these aeroplanes for the United States-with reference to the rubber sheathing which was the only feature which could possibly be held to constitute a technical infringement. It is clear that no royalty could be allowed based on a saving in cost to the defendant by reason of the attachment of rubber sheathing, or upon the value to the defendant of such an arrangement. On the contrary the facts, show that there was no saving in cost or value to the defendant for the reason that the defendant, before the claims-were used, removed and discarded the rubber sheathing and. lined the fuselage openings or troughs with metal, after which there was no infringement whatever for the reason that the retraction of the landing gears of these aeroplanes-into such openings did not form a continuous outer fuselage-surface. We think it is also clear that no royalty would have-been paid for the mere right to manufacture if there was to be no use or sale of the infringing feature. It does not appear that the Government’s order for the aeroplanes directed that the fuselage openings to receive the landing gears when, retracted should be covered with rubber sheathing. Certainly when a device, even though it technically infringes,, is immediately discarded and destroyed as soon as it is manufactured and is never used or sold nothing more than nominal damages could be awarded. This court cannot award such damages. Marion & Rye Valley Railway Co. v. United States, 270 U. S. 280; Perry v. United States, 294 U. S. 330; Sioux Tribe of Indians v. United States, C-531 (1), decided November 9, 1936.
With reference to the fairings and disk-shaped aprons attached by the pilot to one of the Verville-Sperry aeroplanes,. *388 which aeroplane the pilot used in participating in the Pulitzer Race in October 1923, it is established by the facts that the fairings and aprons were attached by the pilot on his ■own initiative and without official knowledge, authority, or direction of the United States. The aeroplane due to its mechanical difficulties did not finish the race. In these circumstances it is clear that there was no unauthorized use by the United States within the meaning of the pertinent statutes, and that the United States cannot be held liable for damages in this regard.
For the several reasons mentioned, plaintiff is not entitled to recover and the petition must be dismissed. It is so •ordered.
Whaley, Judge; Williams, Judge; Gkeen, Judge; and Booth, Chief Justice, concur.