Madden, Judge,
delivered the opinion of the court:
The plaintiffs sue for compensation for the alleged unauthorized use by the United States of their patented process for shrinkproofing woolen cloth. The Government’s principal defense is that the process which it used was not, in fact, the plaintiffs’ patented process. But it also urges that, if it should be found that it has used the patented process, it should further be found that it was justified in doing so *297 because the “prior art” anticipated the plaintiffs’ patent. We conclude that the Government has not used the process covered by the plaintiffs’ patent, as properly construed, hence we do not reach the Government’s second line of defense.
The strong tendency of wool cloth to shrink is due to the structure of the wool fiber. On the outside of the fiber are minute scales which overlap like shingles. When the cloth is washed, the fibers move along each other in the path of least resistance and, when the cloth dries, the scales are entangled so that the fibers cannot get back to their former position.
The problem of shrinkproofing is one of finding a solution, acid or alkaline, strong enough to eat or “etch” off the scales from the fibers, but not strong enough to eat into the fibers and impair their strength. The plaintiffs, in their application for their patent, pointed out that a bath of water charged with chlorine gas was effective to shrinkproof cloth, but that its operation was rapid and difficult to control, and its effect was to weaken the wool fibers. They described another process which used a bath of bleaching powder solution, or hypochlorite, with acid added, and then washed the cloth with a reducing agent to prevent the excessive operation of the hypochlorite. They criticized this process as being erratic in its effects upon the cloth, affecting parts of it too lightly and other parts too greatly. They then said that the purpose of their invention was to provide a process which would be effective, but would permit “the positive control of the degree and uniformity of the hypochlorite effect to be imparted” to the cloth.
In the Patent Office, the plaintiffs’ attention was called to Trotman’s patent. It, too, covered a process for shrinkproof-ing woolen cloth. The process was to treat the cloth with a solution of bleaching powder mixed either with a dilute acid or with sodium bicarbonate. The plaintiffs in reply criticized the Trotman process, and said that it was impracticable. The examiner said in effect that any expedient used in a hypochlorite bath to neutralize free acid would not be invention on the plaintiffs’ part, in view of Trotman’s patent.
The plaintiffs thereupon amended their claims by limiting them to an alkali metal hypochlorite, which in their remarks *298 accompanying the amendments, they parenthetically named sodium. With the amendments, which are shown in Finding 26, their patent was granted.
The Government, during the years 1944 to 1947, caused shrinkproofing processes to be used to treat wool cloth which it acquired. For a few months at the beginning of the period is prescribed one solution, and then changed to another, which was used for the balance of the period. The constituents of the solutions are described in Finding 18. The principal constituent used during both periods as the source of the shrinkproofing ingredient, hypochlorite, was a bleaching powder known as H. T. H., calcium hypochlorite, manufactured by the Mathieson Alkali Works, Inc., or the equivalent of that brand. Calcium hypochlorite is not a metal hypochlorite. Calcium is an earth element. See Finding 15.
The Government’s process which is alleged to have infringed the plaintiffs’ patent used, then, as a principal constituent of its solution, a substance which was not covered by the claims of the plaintiffs’ patent, but which had been expressly eliminated from those claims when they were being studied by the Patent Office, and eliminated by the plaintiffs for the purpose of avoiding collision or possible collision with a prior patent, and thus smoothing the path to the granting of the plaintiffs’ patent. In the circumstances, the plaintiffs are not entitled to a broad interpretation of their claims. If they should receive such an interpretation they would, in effect, be eliminating the amendments which they made in their claims, and we could only surmise as to whether, if the claims had remained as we are asked to interpret them, the plaintiffs would, or should, have been granted their patent.
The doctrine which we have applied above is known in patent circles as “file wrapper estoppel.” Exhibit Supply Co. v. Ace Patents Corp., 315 U. S. 126, 136, is a recent application of the doctrine. Martin v. United States, 86 C. Cls. 311, 378, is an application of it by this court.
The plaintiffs urge that the use by the Government of calcium hypochlorite, which the plaintiffs amended out of their claims when they limited them to metal hypochlorites, did *299 not distinguish the Government’s process from the plaintiffs’ patented process, because the Government did use, along with the nonmetal calcium hypochlorite, metal constituents, at first sodium bicarbonate and sodium tetraborate decahy-drate (borax), and later only borax, in addition to the sodium chloride (common salt) which made up about 17 percent, by weight, of the bleaching powder. But, if the claims of the plaintiffs’ patent are construed to cover any process which uses a metal constitutent, even though it uses substantial quantities of nonmetal ones, the claims would seem to have been anticipated by Trotman who, in his alternative method, suggested sodium bicarbonate, a metal, to be used with the calcium hypochlorite, which is nonmetallic. And, so far as concerns the sodium chloride in the bleaching powder, Trot-man included that when he expressly prescribed the bleaching powder for his solution. The common salt is put into the bleaching powder only as a filler and, so far as appears, it served no purpose in the Government’s solution, merely getting in because the bleaching powder which contained it was a readily available commercial source of supply of the calcium hypochlorite. The doctrine that the claims of a patent should be so construed as to avoid collision with prior patents is applicable.
The plaintiffs contend that, in the Government’s mixture, there exists sodium hypochlorite along with the calcium hy-pochlorite which is the principal constituent of the bleaching powder. This would be based upon the assumption that the sodium bicarbonate or the sodium tetraborate decahydrate (borax), or both, became, in the solution, sodium hypochlorite, or on a similar assumption with regard to the sodium chloride which was in the bleaching powder. It follows, they say, that the solution does contain a metal alkaline hypochlorite, and that their patent gives them a monopoly of that. But if we assume that one or all of these sodium compounds do, in fact, become converted into sodium hypochlorite, we must assume that they also did so in Trot-man’s process, where the same sodium compounds were present. And again we must construe the plaintiffs’ claims so as not to collide with the prior patent.
*300 As we said at the beginning, we think that the Government’s shrinkproofing process was not covered by the plaintiffs’ patent. The plaintiffs’ petition will be dismissed.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.